ELLEN L. PATRIARCA *vs.* CENTER FOR LIVING & WORKING,
INC., & others.[1,2]

Worcester. September 4, 2002. - November 14, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Attorney at Law,* Attorney-client relationship, Communication with represented
party. *Employment,* Termination. *Protective Order.*

This court vacated a protective order that had been issued by a Superior Court
judge, on the basis of Mass. R. Prof. C. 4.2, 426 Mass. 1402 (1998), bar-
ring counsel for a discharged employee from any ex parte contact with
former or future employees of the employer on matters concerning their
former employment or the pending litigation unless that contact were made
with leave of court or of opposing counsel, where the former employees in
question were neither actually represented by the employer's counsel nor
the type of employee covered by rule 4.2, as construed in *Messing, Ru-
davsky & Weliky, P.C.* v. *President & Fellows of Harvard College,* 436
Mass. 347 (2002). [135-141]

CIVIL ACTION commenced in the Superior Court Department on
February 23, 1999.

A motion for a protective order was heard by *Francis R. Fec-
teau,* J.

After an interlocutory appeal was authorized in the Appeals
Court by *Charlotte A. Perretta,* J., the Supreme Judicial Court
granted an application for direct review.

*Denise A. Chicoine* (*Edward S. Englander* with her) for the
plaintiff.

---

[1]Robert Bailey, executive director of the Center for Living & Working, Inc.
(center), and individual members of the board of directors of the center. The
claims against the individual board members were dismissed, and the correct-
ness of that ruling is not before us.

[2]We acknowledge the amicus briefs filed by the Attorney General; National
Employment Lawyers Association (Massachusetts chapter), Lawyers' Commit-
tee for Civil Rights Under Law of the Boston Bar Association, and Disability
Law Center; Associated Industries of Massachusetts; New England Legal
Foundation; The Massachusetts Academy of Trial Attorneys; and the United
States Attorney for the District of Massachusetts and the United States Depart-
ment of Justice.

*Gary H. Goldberg* for the defendants.

The following submitted briefs for amici curiae:

*Thomas F. Reilly,* Attorney General, *& Hilary Weinert Hershman, Laura Maslow-Armand, & Louisa M. Terrell,* Assistant Attorneys General, for the Attorney General.

*John P. McLafferty & Shannon A. McAuliffe* for Associated Industries of Massachusetts.

*Loretta M. Smith* for New England Legal Foundation.

*Donald K. Stern,* United States Attorney, *Roberta Thomas Brown,* Assistant United States Attorney, *& Thomas Helper,* of Baltimore, for the United States Attorney for the District of Massachusetts & another.

*Douglas K. Sheff, John J. St. Andre, Jodi M. Petrucelli, & Kimberly E. Winter* for The Massachusetts Academy of Trial Attorneys.

*Dahlia C. Rudavsky, Ellen J. Messing, Nadine Cohen, & Jane K. Alper* for National Employment Lawyers Association, Massachusetts Chapter, & others.

SPINA, J. A judge in the Superior Court issued a protective order on the basis of Mass. R. Prof. C. 4.2, 426 Mass. 1402 (1998),[3] barring counsel for the plaintiff, Ellen L. Patriarca, from any ex parte contact with former or future employees of the defendant, the Center for Living & Working, Inc. (center), on matters concerning their former employment or the pending litigation unless that contact were made with leave of court or of opposing counsel. A single justice of the Appeals Court granted Patriarca's petition for interlocutory review and authorized an appeal to a panel of the Appeals Court. We granted the plaintiff's application for direct appellate review. Because the former employees in question are neither actually represented by the center nor the type of employee covered by rule 4.2, as construed in *Messing, Rudavsky & Weliky, P.C.* v. *President & Fellows of Harvard College,* 436 Mass. 347 (2002)

---

[3]Rule 4.2 of Massachusetts Rules of Professional Conduct, 426 Mass. 1402 (1998), entitled, "Communication with person represented by counsel," states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

(*Messing*), the protective order must be vacated. We do not reach the broader question of the applicability of rule 4.2 to former employees because, based on the record as presently developed, the former employees in question would not be covered by the rule even if they were still employed by the center. See note 8, *infra*.

*Background.* Patriarca filed suit against the center, its board of directors, and Robert Bailey, executive director of the center, alleging wrongful termination from her employment as a registered nurse supervising the center's personal care attendant program. In the course of discovery, Patriarca stated in her answer to an interrogatory that she had contacted four former employees of the center and had "discussed events which had occurred while we were both employed at [the center]." The defendants filed a motion for a protective order seeking to bar Patriarca and her counsel from having ex parte contact with the center's former employees on matters concerning their employment and the pending litigation. A judge in the Superior Court, who did not have the benefit of our decision in the *Messing* case, concluded that rule 4.2 may prohibit ex parte contact with former employees. He found that, in this case, the statements of former employees could be potentially admissible against the center, or that the former employees' acts or omissions could be imputed to the center. He issued an order barring Patriarca's counsel from "contacting any former employees of the defendant corporation on matters concerning their former employment and this litigation unless defense counsel is present or permission is granted from this [c]ourt or from opposing counsel."[4]

The defendants argue that rule 4.2 prevents ex parte contact

_____

[4]The protective order also stated that it was "applicable only to the plaintiff's counsel and not to the plaintiff herself [because] [r]ule 4.2 is inapplicable to parties." See Mass. R. Prof. C. 4.2. The center argues that allowing the plaintiff herself to contact former employees could violate Mass. R. Prof. C. 8.4 (a), 426 Mass. 1429 (1998), and that the purpose of rule 4.2 would be undermined. See Mass. R. Prof. C. 8.4 (a) ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another"). Because the center did not seek interlocutory review of that portion of the order, it is not properly before us and we need not consider the question. See *Boston Edison Co.* v. *Boston Redevelopment*

with any former employee without first obtaining a ruling from the court in question or permission from the former employer's counsel. They claim that this degree of oversight is necessary because former employees may be able to divulge confidential or privileged information, and that a judge should be the gate-keeper by deciding in the first instance that the ban should be enforced to the extent to which a former employee's statements, made during the employment relationship and within the scope of employment, might be admissible in evidence in an action against the employer.

Patriarca argues that a blanket no-contact rule would provide institutional defendants with the power to control any informa-tion in the possession of anyone who ever worked at that institution. See *Messing, supra* at 358 ("Prohibiting contact with all employees of a represented organization restricts informal contacts far more than is necessary to [protect attorney-client privilege, or prevent clients from making ill advised state-ments without the counsel of their attorney]"); *Niesig* v. *Team I*, 76 N.Y.2d 363 (1990) (blanket ban rejected because it would exact high price and be unnecessary to achieve objectives of rule). She suggests that it is the rare case where a former employee would be in a position to make a statement that could bind the former employer and urges the court to place the burden of showing that a former employee might be in a position to make such admissions on the former employer. In the interest of promoting the search for the truth and furthering informal, efficient, and inexpensive information gathering at the discovery stage of a proceeding, she asks the court to allow broad access to former employees by opposing counsel, "subject to appropri-ate conditions."

*Discussion.* A threshold question is whether a particular employee is actually represented by corporate counsel.[5] An organization may not assert a preemptive and exclusive

---

*Auth.*, 374 Mass. 37, 43 n.5 (1977). However, we note that there is no claim that Patriarca's counsel did anything prohibited by rule 8.4 (a).

[5]If the person is unrepresented, then counsel should be guided by Mass. R. Prof. C. 4.3, 426 Mass. 1404 (1998), "Dealing with unrepresented person," which states: "(a) In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the un-

representation by the organization's lawyer of all current (or former) employees as a means to invoke rule 4.2 and insulate them all from ex parte communication with the lawyers of potential adversary parties.[6] See *Messing, supra* at 356-357. The American Bar Association Committee on Ethics and Professional Responsibility has stated that Model Rule 4.2, on which our rule 4.2 is based, "does not contemplate that a lawyer representing the entity can invoke the rule's prohibition to cover all employees of the entity, by asserting a blanket representation of all of them." ABA Formal Op. 95-396, § VI (1995). See *Carter-Herman* v. *Philadelphia*, 897 F. Supp. 899, 903 (E.D. Pa. 1995) (rejecting "the notion that every city employee is automatically a represented party simply by virtue of his or her employment without any initiative on the part of the employee to obtain legal help from the City"); *Brown* v. *St. Joseph County*, 148 F.R.D. 246, 250 (N.D. Ind. 1993) ("no attorney has the right to appear as counsel for another without the latter's consent . . . and it follows that an attorney cannot properly hold himself out as representing a person who has not agreed to the representation" [citation omitted]). Thus, the center may not invoke rule 4.2 to claim that all current and former employees are represented, and therefore the protective order is overbroad. Any analysis must be employee specific. The center has made no factual showing that the former employees in question are actually represented by the center's (or their own personal) counsel.

We turn to the rule in the *Messing* case to determine whether the employees in question may be considered represented for purposes of rule 4.2. The purpose of rule 4.2 is to "protect the attorney-client relationship and prevent clients from making ill-

represented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. (b) During the course of representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of the client." See Restatement (Third) of the Law Governing Lawyers § 103 comment e (2000).

[6]As set forth in comment [4] to rule 4.2, if the person is in fact represented by his or her own counsel, then it is that counsel's permission that must be obtained prior to ex parte contact. *DaRoza* v. *Arter*, 416 Mass. 377, 381-382 (1993) (setting out circumstances in which implied attorney-client relationship can arise).

advised statements without the counsel of their attorney." *Messing, supra* at 358. However, we recognized that prohibiting ex parte contact with all employees of a represented organization went beyond the purpose of the rule, which was not to "protect a corporate party from the revelation of prejudicial facts." *Id.,* quoting *Dent* v. *Kaufman,* 185 W.Va. 171, 175 (1991). We sought a balance between the need to discover relevant facts and the competing need to protect the attorney-client relationship. *Id.* at 358-359. We construed rule 4.2 (and comment [4] thereto) to prohibit an attorney from having ex parte contact only with certain employees of an organization, namely, those "who exercise managerial responsibility in the matter, who are alleged to have committed the wrongful acts at issue in the litigation, or who have authority on behalf of the corporation to make decisions about the course of the litigation."[7] *Id.* at 357. As construed, the rule allows "ex parte interviews without prior counsel's permission when an employee clearly falls outside of the rule's scope." *Id.* at 359.

Patriarca was employed by the center as a registered nurse whose job responsibility was to manage the personal care at-

---

[7]At the time *Messing, Rudavsky & Weliky, P.C.* v. *President & Fellows of Harvard College,* 436 Mass. 347 (2002), was decided, comment [4] to Mass. R. Prof. C. 4.2 stated: "In the case of an organization, this [r]ule prohibits communications by a lawyer for another person or entity concerning the matter in representation with persons having managerial responsibility on behalf of the organization with regard to the subject of the representation, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this [r]ule. Compare [r]ule 3.4(f)."

After the *Messing* decision, effective June 5, 2002, comment [4] was amended by 437 Mass. 1303 (2002): "In the case of an organization, this [r]ule prohibits communications by a lawyer for another person or entity concerning the matter in representation only with those agents or employees who exercise managerial responsibility in the matter, who are alleged to have committed the wrongful acts at issue in the litigation, or who have authority on behalf of the organization to make decisions about the course of the litigation. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this [r]ule. Compare [r]ule 3.4(f)."

tendant program, a program that provides persons who have permanent or chronic disabilities with assistance to allow them to live independently in their community instead of being institutionalized. See 130 Code Mass. Regs. §§ 422.416-422.423 (1999). Two of the former employees with whom she made contact had been occupational therapists. A third was an assistant community department manager-supervisor and skills trainer. These three had worked closely with Patriarca and Bailey at the center. The fourth had been a business manager at the center and had witnessed the events which led to Patriarca's separation from the center.

These four former employees of the center do not come within any category of employee covered by rule 4.2. See *Messing, supra* at 357. None of them is alleged to have committed the wrongful acts at issue in the litigation. There is no evidence, under their job descriptions or otherwise, that any of them had authority on behalf of the corporation to make decisions about the course of the litigation. The question whether any of them exercised managerial responsibility in the matter, however, is less obvious.

We said in *Messing* that employees with managerial responsibility in the matter "include[] only those employees who have supervisory authority over the events at issue in the litigation." *Id.* at 361. Patriarca alleges that Bailey pressured her to evaluate individuals who were not eligible for personal care services, to falsify documents to make it appear that certain individuals were eligible for personal care services, and finally to present false information to the Department of Medical Assistance by recommending more services for clients than was required. Her surviving claims against the center allege breach of contract and wrongful termination in violation of public policy. Thus, to find that the former employees in question exercised managerial responsibility in the matter, we must determine either that they were in a position to direct Bailey to conduct himself as alleged, or to cause the center to respond as alleged. The center makes no claim that the occupational therapists and the skills trainer had any such managerial responsibility.

The fourth employee, described by the center as "Director of PCA/Fiscal Intermediary Services and former Business

Manager," was allegedly "a 'management' witness to the [p]laintiff's separation which ultimately led to this [c]omplaint," and "was a central part of [the center's] management team." Being a "witness" to the plaintiff's separation does not establish that the fourth employee was involved in supervising, planning, or directing the events and practices that led to this litigation. Based on the record before the motion judge, there is no basis to conclude that the fourth employee "exercise[d] managerial responsibility *in the matter*" (emphasis added). *Id.* at 357.[8]

Subject to the caveat just discussed, none of the four former employees in this case came within a protected category of employee identified by the *Messing* case while she was employed by the center. Thus, none would have been protected from ex parte contact while an active employee of the center. A change in status from current to former employee does not change the fact that each falls "outside of the rule's scope." *Messing, supra* at 359. They are not protected by rule 4.2 from ex parte contact by Patriarca's counsel. In making any ex parte contact with these former employees, Patriarca's counsel must, of course, be assiduous in meeting other ethical and professional standards found outside rule 4.2.[9]

The center argues that each of these four employees was

---

[8]We are mindful that any deficiencies in the center's showing that the fourth former employee came within the managerial category under *Messing* may be due to the fact that *Messing* had not been decided at the time of the hearing on the motion seeking the protective order. Fairness requires that the center be given the opportunity to make the necessary showing by renewing its motion as to that and any other former employee the plaintiff may contact.

[9]As to the ethical restrictions that direct an attorney's actions, see 1 G.C. Hazard & W.W. Hodes, The Law of Lawyering § 4.2:107, at 744.4 n.4 (Supp. 1998) ("interviewing lawyer must make his role clear, as [r]ule 4.3 requires, and must neither ask for nor listen to statements that include privileged matter"); Restatement (Third) of the Law Governing Lawyers § 102 (2000) ("A lawyer communicating with a nonclient in a situation permitted under § 99 [of the Restatement] may not seek to obtain information that the lawyer reasonably should know the nonclient may not reveal without violating a duty of confidentiality to another imposed by law"); Mass. R. Prof. C. 4.4, 426 Mass. 1405 (1998) ("In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person"); Mass. R. Prof. C. 8.4 (a) ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the

subject to a written confidentiality agreement and that the kind of information that Patriarca's counsel would seek during ex parte interviews pertains to the practices of the center and is of the type covered by those confidentiality agreements. The text of the agreements, however, shows only that they are designed to protect the consumers' and employees' medical and personal information, having nothing to do with the interests that rule 4.2 was designed to protect. The confidentiality of this information is sufficiently protected if the names of any individual patients are not disclosed. See *Reproductive Servs., Inc.* v. *Walker*, 439 U.S. 1307 (1978) (by deleting names of patients from medical records sought in discovery, patients' privacy would be adequately protected); *Williams* v. *Buffalo Gen. Hosp.*, 28 A.D.2d 777, 778 (N.Y. 1967) (claimant who wished to obtain medical records of patients on specific ward allowed to do so, without necessitating revelation of patients' names).

The question of the general applicability of rule 4.2 to former employees is one we need not address because, on the facts presented, the former employees in question would not have been protected, even while employed, from ex parte contact by rule 4.2. The majority of courts that have decided this issue have concluded that former employees, for the most part, do not fall within the constraints of rule 4.2.[10] This is a question that

_____

acts of another"). See also *Morrison* v. *Brandeis Univ.*, 125 F.R.D. 14, 19-20 (D. Mass. 1989) (guidelines for ex parte interviews).

[10]Some courts have concluded that rule 4.2 does not bar ex parte contacts with a corporate defendant's former employees. See, e.g., *Orlowski* v. *Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 728 (N.D. Ill. 1996) (former and some current employees allowed to be contacted, but discussion barred of privileged information); *Terra Int'l, Inc.* v. *Mississippi Chem. Corp.*, 913 F. Supp. 1306, 1315 (N.D. Iowa 1996) (ex parte communications permitted with former employees, unless they are in fact represented by corporate, or any, counsel, which would set them off limits); *Action Air Freight, Inc.* v. *Pilot Air Freight Corp.*, 769 F. Supp. 899, 903 (E.D. Pa. 1991), appeal dismissed, 961 F.2d 207 (3d Cir. 1992) (defendant's counsel permitted to make ex parte contact with plaintiff's former employee); *Valassis* v. *Samelson*, 143 F.R.D. 118, 123 (E.D. Mich. 1992) (former employee no longer agent of former corporate employer and thus outside scope of rule 4.2); *Polycast Tech. Corp.* v. *Uniroyal, Inc.*, 129 F.R.D. 621 (S.D.N.Y. 1990) (former employees are beyond power of corporation to "barricade" against ex parte contacts); Siguel *vs.* Trustees of Tufts College, U.S. Dist. Ct, Civ. A. No. 88-0626Y (D. Mass. Mar. 12, 1990) (plaintiff allowed to interview current and former employees

invites input from the organized bar through the rule making process.

The protective order issued by the Superior Court is vacated. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

not named individual defendants and guidelines suggested for such contact); *H.B.A. Mgt., Inc.* v. *Estate of Schwartz*, 693 So. 2d 541, 542 (Fla. 1997) (rule 4.2 does not prohibit claimant's attorney from ex parte communication with former employees of defendant-employer); *Reynoso* v. *Greynolds Park Manor, Inc.*, 659 So. 2d 1156, 1157 (Fla. 1995) (rule 4.2 does not apply to former employees); *Humco, Inc.* v. *Noble*, 31 S.W.3d 916, 920 (Ky. 2000) (ex parte contacts allowed with organization's former employees); *Niesig* v. *Team I*, 76 N.Y.2d 363 (1990) (former employees are not covered by predecessor to rule 4.2); *Wright* v. *Group Health Hosp.*, 103 Wash. 2d 192, 201 (1985) (because former employees cannot possibly speak for corporation, rule 4.2 does not apply to them); *Strawser* v. *Exxon Co., U.S.A.*, 843 P.2d 613, 614 (Wyo. 1992) (no general preclusion in rule 4.2 for contact with former employees); ABA, Model Rules of Professional Conduct (2002), comment [7] to rule 4.2 ("Consent of the organization's lawyer is not required for communication with a former constituent").

Other courts have conditionally endorsed a ban on ex parte contacts with former employees. See, e.g., *Curley* v. *Cumberland Farms, Inc.*, 134 F.R.D. 77, 94-95 (D.N.J. 1991) (organization required to produce facts to justify barring of ex parte contacts with former employees, and such contact allowed when those facts not produced); *Amarin Plastics, Inc.* v. *Maryland Cup Corp.*, 116 F.R.D. 36, 41 (D. Mass. 1987) (defendant required to establish factual link to justify ban, grounding potential ban on attorney-client privilege).

One court has banned ex parte contact outright. See *Public Serv. Elec. & Gas Co.* v. *Associated Elec. & Gas Ins. Servs., Ltd.*, 745 F. Supp. 1037, 1042 (D.N.J. 1990) (*PSE&G*) (rule 4.2 prohibits any ex parte contact with defendant's former employees). But see *Klier* v. *Sordoni Skanska Constr. Co.*, 337 N.J. Super. 76, 91 (2001) (*PSE&G* interpretation rejected because New Jersey rules of professional conduct had been modified effective in 1996 to state that rule applies only to employees who are members of organization's litigation control group, or are represented by another lawyer in matter).