JAMES G. CLARK, administrator,[1] vs. BEVERLY HEALTH AND
REHABILITATION SERVICES, INC., & others.[2]

Suffolk. September 4, 2003. - October 29, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Attorney at Law,* Attorney-client relationship, Canons of ethics, Communication with represented party. *Protective Order.*

This court concluded that Mass. R. Prof. C. 4.2, as amended, 437 Mass. 1303 (2002), prohibiting an attorney from communicating with a represented party in the absence of that party's attorney, did not apply to former employees [272-279]; consequently, where it was not demonstrated that former employees of a medical organization (the defendant in a wrongful death action) were represented by counsel or had any relationship to the organization other than that of former employee or former agent, this court vacated protective orders prohibiting counsel of the administrator of the estate of the deceased in the wrongful death action from privately making contact with the organization's former employees without permission of the court or defense counsel [280].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 20, 2002.

The case was reported by *Cowin, J.*

*Jeffrey S. Beeler* for the plaintiff.

*Joseph M. Desmond* (*Lawrence F. Boyle* with him) for the defendant.

GREANEY, J. This case is before us on a reservation and report, without decision, by a single justice of this court. The issue for review is whether, in light of *Messing, Rudavsky & Welicky, P.C.* v. *President & Fellows of Harvard College*, 436 Mass. 347 (2002) (*Messing*); *Patriarca* v. *Center for Living & Working, Inc.*, 438 Mass. 132 (2002) (*Patriarca*); and other authority, Mass. R. Prof. C. 4.2, as amended, 437 Mass. 1303 (2002), ap-

---

[1]Of the estate of Frank D. Clark.

[2]Rebecca Reeve, as personal representative of the estate of Henry M. Wieman; Carmen Vanhorne; Beverly Enterprises, Inc.; Beverly Enterprises-Massachusetts, Inc.; Teresa L. Brosnihan; and Mary L. Davis.

plies to former employees. A Superior Court judge held that it did, and entered protective orders prohibiting the plaintiff's counsel from privately making contact with the organizational defendants' former employees without permission of the court or defense counsel. We conclude that rule 4.2 does not apply to former employees. Accordingly, we vacate the protective orders.

1. The background of this case is as follows. The plaintiff, James G. Clark, as administrator of the estate of Frank D. Clark (Clark), brought a wrongful death action against Beverly Health and Rehabilitation Services, Inc.; Beverly Enterprises, Inc.; and Beverly Enterprises-Massachusetts, Inc. (collectively, Beverly Health); and the individual defendants. The complaint alleged that Clark died as the result of an overdose of morphine administered by the defendant Carmen Vanhorne, a nurse at the Hermitage, where Clark resided. The Hermitage is a health and rehabilitation center owned by Beverly Health. The complaint further alleged that after Vanhorne administered the overdose of morphine, she was ordered by the defendant, Dr. Henry M. Wieman, to administer a morphine antidote, Narcan, to Clark. Wieman, who has since died and is represented by a personal representative, then allegedly ordered Vanhorne to cease administering the Narcan. The plaintiff maintains that Wieman's actions and understaffing at the Hermitage significantly contributed to Clark's death.

In the course of discovery, the plaintiff's counsel made contact with Sharyn Lee Rennie, a nurse formerly employed at the Hermitage who was on duty the night that Clark died. The judge found, and the plaintiff does not dispute, that Rennie was "directly involved" in the subject matter of the litigation. The plaintiff's counsel identified himself to Rennie, identified the parties, and described the general nature of the case. See Mass. R. Prof. C. 4.3, 426 Mass. 1404 (1998). After ascertaining that Rennie was unrepresented and was willing to speak with him without an attorney, the plaintiff's lawyer had at least one substantive conversation with Rennie concerning her memory of relevant events. Subsequently, Rennie was deposed. She chose to appear without counsel. At the deposition, both the plaintiff's and Beverly Health's attorneys had the opportunity to

question her under oath, and Beverly Health's attorney posed several questions to Rennie concerning her prior contacts with the plaintiff's lawyer.

Shortly after Rennie's deposition, Beverly Health's attorneys sought a protective order to prevent the plaintiff's counsel from ex parte contact with former Beverly Health employees. The plaintiff opposed the motion and filed a cross motion for an order allowing such contacts and prohibiting Beverly Health's counsel from soliciting former employees of the organization as clients. A Superior Court judge entered a protective order prohibiting the plaintiff's counsel from contacting former Beverly Health employees unless defense counsel were present or permission were granted by defense counsel or the court.[3] However, the judge expressly granted leave to the plaintiff to renew his motion to make contact with former Beverly Health employees, if our decision in the then pending *Patriarca* case so permitted.

While the *Patriarca* case was pending, we decided the *Messing* case, which we shall discuss later in this opinion. The plaintiff filed a motion to reconsider the protective order on the ground that it contravened our holding in *Messing.* The judge summarily denied the motion. The plaintiff unsuccessfully sought interlocutory relief in the Appeals Court pursuant to G. L. c. 231, § 118, first par. The plaintiff then petitioned this court pursuant to G. L. c. 211, § 3, to vacate the Superior Court orders. A single justice granted relief from the orders "to the extent that the blanket prohibition against contact with any former employee is inconsistent with the decisions in" *Messing* and *Patriarca.* She reserved and reported the case on the question whether, in light of the *Messing* and *Patriarca* decisions, rule 4.2 "has any applicability to former employees of a defendant corporation who were directly involved in the subject matter of the litigation and questioning them about the subject matter of the litigation."

2. We have recently examined the scope of rule 4.2, which is

---

[3]The protective order also provided: "In the event the plaintiff needs to introduce evidence at trial obtained through interviews with former employees of [Beverly Health], plaintiff must first request permission from this Court through a motion in limine."

also known as the "no-contact rule."[4] In *Messing, supra,* we considered the extent to which the no-contact rule permits ex parte communications between an opposing attorney and the current employees of an organization represented by counsel. In *Patriarca, supra,* we considered the application of the no-contact rule to former employees who were not represented by the organization's counsel, were not alleged to have committed the wrongful acts alleged in the litigation, and were without authority to bind the organization in matters concerning the litigation. We expressly left open the broader question of the general applicability of rule 4.2 to former employees. *Id.* at 134. That question confronts us here.

The judge, relying on the then current text of comment [4] to rule 4.2, concluded that the no-contact rule barred ex parte contact between the plaintiff's lawyer and former employees of Beverly Health, because:

> "Given that the plaintiff's counsel is contacting the defendants' former employees who were directly involved in the subject matter of the litigation and questioning them about the subject matter of the litigation, it is clear that the employees' statements could constitute admissions and/or their acts or omissions could be imputed to the corporate defendants."

The judge's conclusions are not supported by the text of rule 4.2, the text of comment [4], or by the purposes the rule is intended to serve.

Rule 4.2 provides:

> "In representing a client, a lawyer shall not communicate about the subject of the representation with a

[4]We reject, as lacking in merit, Beverly Health's threshold argument that this case does not deserve review. To the contrary, the case is particularly appropriate for review under G. L. c. 211, § 3. First, the plaintiff, whose motion for reconsideration and petition for interlocutory appellate review were denied, has no other pretrial avenue of relief available. It would be difficult, if not impossible, for him to demonstrate on posttrial appeal that the outcome of the case was materially affected by his lack of unimpeded access to former Beverly Health employees. Second, the question before us has broad implications for the administration of justice and for the conduct of attorneys throughout the Commonwealth. See *Messing, supra* at 351.

person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."[5]

The language is unambiguous. Rule 4.2 limits the circumstances in which a lawyer may communicate ex parte with a person whom the lawyer knows to be represented by counsel. While the rule prohibits a lawyer from making ex parte contact with a former employee whom counsel knows to be represented, see *Patriarca, supra,* at 136 n.6, it neither prohibits nor purports to regulate private contacts between an adverse attorney and the organization's former employees as such.

Beverly Health's attempt to bring former employees within the ambit of the no-contact rule by way of comment [4] is unpersuasive.[6] If anything, comment [4] emphasizes that only current employees, and only certain kinds of current employees, properly fall within the prohibitions of the no-contact rule. As revised in light of our holding in *Messing, supra,* comment [4] applies rule 4.2 to prohibit a lawyer's ex parte contact "only" with three categories of employees whose interests are closely aligned with the organization in the dispute: "those agents or employees [1] who exercise managerial responsibility in the matter, [2] *who are alleged to have committed the wrongful acts*

[5]Rule 9.1 (h) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1432 (1998), defines "[p]erson" to include "a corporation, an association, a trust, a partnership, and any other organization or legal entity."

Rule 4.2 was adopted on June 9, 1997, became effective January 1, 1998, and its comment [4] was amended effective June 5, 2002, in response to our decision in *Messing,* in a manner we describe, *infra.* Rule 4.2 is identical to the American Bar Association's Model Rule 4.2. See *Messing, supra* at 352. On January 1, 1998, rule 4.2 superseded S.J.C. Rule 3:07, Canon 7, DR 7-104 (A) (1), as appearing in 382 Mass. 786 (1981). *Id.* "In the context of contact with the employees of a represented organization, courts have interpreted the two versions of the rule to prohibit the same conduct." *Id.* at 353.

[6]Comment [4] to rule 4.2 provides: "In the case of an organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation only with those agents or employees who exercise managerial responsibility in the matter, who are alleged to have committed the wrongful acts at issue in the litigation, or who have authority on behalf of the organization to make decisions about the course of the litigation. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f)."

*at issue in the litigation*, or [3] who have authority on behalf of the organization to make decisions about the course of the litigation" (emphasis supplied).[7] There can be little doubt that categories (1) and (3), both of which employ the present tense ("who exercise," "who have authority . . . to make decisions"), refer to employees and agents who have an ongoing relationship to the represented organization, that is, who are current employees or agents. Beverly Health does not appear to argue otherwise. Rather, Beverly Health argues that, because the second category of prohibited employee is described in the past tense, it therefore includes former employees. Because the composition of the second category of employee was not affected by our holding in *Messing, supra,* Beverly Health contends that category (2) pertains to Beverly Health's former employees, and the protective order must stand.

A commonsense reading of the comment refutes this argument. First, category (2) is not free standing. It is a clause that modifies the phrase "those agents or employees." By definition, *former* agents or employees at one time were, but no longer are, "agents or employees." To conclude otherwise would fold former constituents of the organization into its current composition; an illogical result. Second, the use of the past tense in category (2) merely reflects the common assumption that the current agent or employee's allegedly wrongful conduct will have occurred prior to the filing of the complaint ("alleged to have committed").[8]

The purposes of rule 4.2 would not be served by including

---

[7]At the time the judge entered his orders, comment [4] prohibited ex parte contact between a lawyer and "(1) 'persons having managerial responsibility on behalf of the organization with regard to the subject of the representation'; (2) persons 'whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability'; and (3) persons 'whose statement may constitute an admission on the part of the organization.' " *Messing, supra* at 354, quoting Mass. R. Prof. C. 4.2 comment [4], 426 Mass. 1403 (1998). In *Messing,* we rejected comment [4] as "overly protective" of the organizational party and "too restrictive" of opposing counsel. *Id.* at 357. In response to our holding in *Messing,* comment [4] was amended, effective June 5, 2002, in terms identical to our language in *Messing* with the addition of the word "agents." See *id.* at 360; Mass. R. Prof. C. 4.2 comment [4], as amended, 437 Mass. 1303 (2002).

[8]In any event, comment [4] is an illustrative tool, not a bootstrap. While it provides guidance to the practitioner in certain circumstances, it cannot

former employees within its reach. Rule 4.2 exists "to protect the attorney-client relationship and prevent clients from making ill-advised statements without counsel of their attorney." *Messing, supra* at 358. See *Patriarca, supra* at 136-137. In the context of organizational entities, it aims to balance, on the one hand, a litigant's need for information and, on the other, an organization's need to protect its legitimate interests. *Id.* at 137. An organization's attorney-client relationship is appropriately protected when the no-contact rule is construed to prohibit ex parte communication with employees "who are so closely tied with the organization or the events at issue that it would be unfair to interview them without the presence of the organization's counsel." *Messing, supra* at 359. Preventing the disclosure of unfavorable facts merely because they happen to have occurred in the workplace is not a legitimate organizational interest for purposes of applying rule 4.2. *Id.* at 358, quoting *Dent* v. *Kaufman*, 185 W. Va. 171, 175 (1991) (no-contact rule does not exist "to protect a corporate party from the revelation of prejudicial facts").

It stands to reason that, if including all current employees within the ambit of the no-contact rule would unfairly tip the balance of the rule in the organization's favor, the imbalance would be exacerbated by including former employees and agents merely because they may have had some involvement in the events at issue. As we emphasized in *Messing*, rule 4.2 protects only the attorney-client relationship, and not the underlying facts. *Messing, supra* at 359. See Curley *vs.* North American Man Boy Love Ass'n, No. Civ. A. 00-10956-GAO (D. Mass. Mar. 31, 2003) (construing rule 4.2 in light of our holding in *Messing*, and ruling that "former member of an organization . . . does not become a present 'client' " of organization's attorney "solely because the person's own acts done, when the person was a member, might later be a basis for holding the organization liable"). See P.J. Liacos, M.S. Brodin, & M. Avery,

enlarge, diminish, or in any way affect the scope of the no-contact rule itself. See Mass. R. Prof. C. Scope [1], 426 Mass. 1305 (1998) ("Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules"). See also *Valassis* v. *Samuelson*, 143 F.R.D. 118, 122 (E.D. Mich. 1992) (improper to "focus on the language of the Comment without first construing the Rule upon which the Comment is based").

Massachusetts Evidence § 13.4.4, at 781-783 (7th ed. 1999) (distinguishing attorney-client communications from facts).[9]

Indeed, exclusion of former employees furthers both the specific and the more general purposes of rule 4.2. It must be remembered that rule 4.2 is but one part of a comprehensive system of laws and regulations designed to hold counsel to the highest professional standards in our adversary system. Within that system, pretrial (including precomplaint) discovery plays an essential role. It is the phase in which material facts are discovered, issues are narrowed as theories of the case are tested, rejected, or refined, and the parties and their attorneys have the opportunity to assess the strengths and weaknesses of their case with an eye toward both trial and the negotiation of settlement. Courts have long recognized that informal interviews are an exceptionally efficient means for the meaningful gathering of facts. They are generally more conducive to full disclosure and far less costly than the more structured processes of formal discovery, or even informal investigation with opposing counsel present. See *Niesig* v. *Team I*, 76 N.Y.2d 363, 372 (1990) ("Costly formal depositions that may deter litigants with limited resources, or even somewhat less formal and costly interviews attended by adversary counsel, are no substitute for such off-the-record private efforts to learn and assemble, rather than perpetuate, information"). See also *Cram* v. *Lamson & Sessions Co., Carlon Div.*, 148 F.R.D. 259, 261 (S.D. Iowa 1993); *Siguel vs. Trustees of Tufts College*, Civ. A. No. 88-0626-Y (D. Mass. Mar. 12, 1990). Moreover, in cases where witness testimony is more central than documentary testimony,

___

[9]The interests of a former employee, even one with some prior involvement in the contested events, and the interest of the organization are not necessarily coterminous. Frequently, a former employee may have interests adverse to that of the former employer. A blanket rule that would require the former employee to accept the organization's representation would deny that individual the right to an attorney of the person's choice, *Patriarca, supra* at 136 (attorney may not appear for another without that person's consent), and may involve the corporation's counsel in conflicts of interest. See Mass. R. Prof. C. 1.7, as amended, 430 Mass. 1301 (1999); Mass. R. Prof. C. 1.8, 426 Mass. 1338 (1998). The former employee who wishes to be represented by the organization's counsel may, if circumstances permit, freely choose to do so, but the court should not "blindly" "assume that they are actually represented." *Michaels* v. *Woodland*, 988 F. Supp. 468, 474 (D.N.J. 1997).

a ban such as that proposed by Beverly Health might inhibit the vindication of a party's rights because the litigant's counsel could not be certain that the pleadings are sufficiently grounded in facts to meet counsel's obligations of truthfulness to the tribunal. See *Kaveney* v. *Murphy*, 97 F. Supp. 2d 88, 94 (D. Mass. 2000); *Niesig* v. *Team I, supra* at 372.

Former employees may be a useful source of meaningful information, because they may feel less directly tied to the employer's interests and therefore more willing to discuss informally what they know. At the same time, these employees may still have economic and other ties to the organization that would make them reluctant to speak freely in the presence of the organization's attorneys, even in an informal setting. In effect, immunizing former employees from all ex parte interviews would permit the organization to monitor the flow of nonprivileged information to a potential adversary at the expense of uncovering material facts. Fairness in our established system of adversary representation would be the casualty. See *Niesig* v. *Team I, supra* at 371 ("The broader the definition of 'party' in the interests of fairness to the corporation, the greater the cost in terms of foreclosing vital informal access to facts"). Much less drastic options, such as appropriately tailored protective orders, and its own formal and informal interviews with former employees, are available to protect Beverly Health's attorney-client and investigative interests.

Beverly Health suggests unethical conduct, a priori, on the part of any opposing counsel who may seek or conduct an ex parte interview with a former employee. We reject this notion. Although rule 4.2 does not prohibit a lawyer from making contact with former employees of a represented corporation, "counsel must, of course, be assiduous in meeting other ethical and professional standards found outside rule 4.2." *Patriarca, supra* at 139. Without limitation, counsel conducting the ex parte interview must pay particular attention to avoid transgressing Mass. R. Prof. C. 4.1, 426 Mass. 1401 (1998), governing a lawyer's duty of truthfulness to a third party; Mass. R. Prof. C. 4.3, 426 Mass. 1404 (1998), governing a lawyer's dealings with unrepresented persons; and Mass. R. Prof. C. 4.4, 426 Mass. 1405 (1998), requiring the lawyer to refrain from using unfair

or illegal tactics to obtain evidence. See *Patriarca, supra* at 139-141 & nn. 9, 10. Further, counsel must also be careful to avoid violating applicable privileges or matters subject to appropriate confidences or protections.[10] Existing attorney disciplinary procedures should adequately address any less than scrupulous professional conduct. Our holding today follows the weight of authority on the matter.[11]

[10]There is an abundance of authority in these circumstances directing counsel strictly to avoid matters that are privileged or confidential in discussions with former employees. See Rockland Trust Co. *vs.* Computer Assoc. Int'l, Inc., No. Civ. A. 95-11683-DPW (D. Mass. Feb. 19, 1999) (support for no-contact rule in circumstances where witness has been exposed to privileged or confidential material "stems not from Rule 4.2 but from 'ample case authority' which permits courts to impose such limitations . . . and to impose sanctions on attorneys who seek to cause a former employee to disclose confidential information"); Restatement (Third) of the Law Governing Lawyers § 102 (2000) ("A lawyer communicating with a nonclient [ex parte] may not seek to obtain information that the lawyer reasonably should know the nonclient may not reveal without violating a duty of confidentiality to another imposed by law"). See also *id.* at § 102 comment b (prohibition against inquiring into confidential information flows "from the law of agency, evidence, and unfair competition and similar bodies of law . . . [and] is based on fundamental and general law such as the attorney-client privilege") and comment c ("[Section 102] assumes that a lawyer is communicating with an agent permissibly . . . but that the agent possesses confidential information of a principal that the agent could not lawfully divulge. The lawyer's inquiry may not extend to matters whose disclosure would violate the agent's legal duty"). See also the following cases that acknowledge that communications with former employees are permitted while cautioning attorneys to avoid inquiring into confidential communications, *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 562 n.4 (N.D. Ga. 1992); *Amarin Plastics, Inc.* v. *Maryland Cup Corp.*, 116 F.R.D. 36, 41-42 (D. Mass. 1987); *Sanifill of Ga., Inc.* v. *Roberts*, 232 Ga. App. 510, 512 (1998).

[11]See, e.g., *Valassis* v. *Samuelson*, 143 F.R.D. 118, 121 (E.D. Mich. 1992) ("The majority of courts have held that Rule 4.2 does not apply to any former employee"); *Nessig* v. *Team I, supra* at 368; Larkin *vs.* United States, No. Civ. A. 01-0527 (E.D. La. Oct. 9, 2002) ("Rule 4.2 does not apply to former employees"); Siguel *vs.* Trustees of Tufts College, Civ. A. No. 88-0626-Y (D. Mass. Mar. 12, 1990) ("The mere fact that a former employee is a prospective witness does not trigger" no-contact rule). See generally ABA Annotated Model Rules of Professional Conduct 406-408 (4th ed. 1999), and cases cited. Our conclusion also accords with other authority. See, e.g., Restatement (Third) of the Law Governing Lawyers § 100 comment b (2000); 2 G.C. Hazard & W.W. Hodes, The Law of Lawyering § 4.2:107, at 739 (Supp. 1994) (no-contact rule "does not address communications with *former* agents and employees, and technically there should be no bar" [emphasis in original]). The conclusion is also consistent with the position long maintained

3. Beverly Health has not demonstrated that the class of former employees included in the protective orders, or any of them, is either represented by counsel or has any relationship to the organization other than that of former employee or former agent. Because neither the text of rule 4.2 or of comment [4], nor the purposes to be served by the rule, permits the application of rule 4.2 to former employees, the protective orders should not have issued.

4. The orders of the Superior Court entered on June 25, 2001, and May 6, 2002, are vacated. The single justice will remand the case to the Superior Court for the entry of an order denying Beverly Health's motion for a protective order and for further proceedings consistent with this opinion.

*So ordered.*

by the ABA, which drafted the rule, see ABA Committee on Ethics and Professional Responsibility Formal Op. 91-359 (1991) (rule 4.2 does not apply to former employees and comment "gives no basis for concluding that such coverage was intended"), and made explicit in the organization's proposed model rules and comments. See ABA Center for Professional Responsibility, Ethics 2000 Commission, comment [7] to Rule 4.2 of the Proposed Model Rule of Professional Responsibility ("Consent of the organization's lawyer is not required for communication with a former constituent"). Proposed comment [7] also attempts to clarify the permitted scope of the ex parte contact with an additional statement, as follows: "In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization." See Massachusetts Bar Association, Committee on Professional Ethics Opinion No. 02-3 ("Former agents or employees are not 'agents or employees' of an organization").