SUPREME JUDICIAL COURT 
 
 ROSANNA GARCIA[1] & others[2] vs. EXECUTIVE OFFICE OF HOUSING AND LIVABLE COMMUNITIES

 
 Docket:
 SJC-13513
 
 
 Dates:
 September 9, 2024 - November 21, 2024
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Georges, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Housing and Livable Communities. Department of Housing and Community Development. Statute, Construction. Practice, Civil, Summary judgment, Class action.
 
 

       Civil action commenced in the Superior
Court Department on December 9, 2016.
      After review by this court, 480 Mass. 736
(2018), the case was heard by Douglas H. Wilkins, J., on motions for summary
judgment.
      The Supreme Judicial Court granted an
application for direct appellate review.
      Ilana B. Gelfman (Laura Massie also
present) for the plaintiffs.
      Kimberly Parr, Assistant Attorney General
(James A. Sweeney also present) for the defendant.
      Edwina Clarke & Christopher J.C.
Herbert, for Massachusetts Coalition for the Homeless & others, amici
curiae, submitted a brief.
      Amy Copperman, Jeannine Casselman, &
Kate Gannon, for MLPB & another, amici curiae, submitted a brief.
      WOLOHOJIAN, J.  Before us is a single question of statutory
interpretation:  whether the
Legislature's directive that the Executive Office of Housing and Livable
Communities (HLC) "shall immediately provide shelter for up to 30 days to
families who appear to be eligible for shelter based on statements provided by
the family and any other information in the possession of the executive
office," St. 2023, c. 28, § 2, line item 7004-0101 (immediate
placement proviso), permits HLC to require third-party verification of certain
information as a precondition to such immediate temporary emergency
shelter.  We conclude that it does
not.  The plain language of the immediate
placement proviso provides that a family must receive immediate temporary
placement where it appears that the family meets the eligibility requirements
for shelter, and that the appearance of eligibility may be established at the
time of initial application by statements from family members and by
information already in the agency's possession. 
Third-party verification of eligibility criteria is not required at the
time of initial application.[3]  We
therefore reverse the judgment of the Superior Court to the extent it provides
otherwise.[4]
      Background.[5]  In 1983, the Legislature passed "An Act
Further Regulating Assistance to Certain Needy Persons."  St. 1983, c. 450.  Among other things, the act expanded the
benefits then offered through the Commonwealth's public assistance program
(popularly known as the "emergency assistance program") for needy
families with children and pregnant women without children to include
"temporary shelter as necessary to alleviate homelessness."  St. 1983, c. 450, § 1, amending
G. L. c. 18, § 2.  Temporary
shelter obtained through this program is known as "emergency assistance
shelter."  
      HLC is responsible for administering the
program, subject to appropriation.[6] 
G. L. c. 23B, § 30. 
"The Legislature appropriates funds for the program through two
budgetary line items, one of which contains a number of provisos . . . ."  Garcia v. Department of Hous. & Community
Dev., 480 Mass. 736, 740 (2018).  One
such proviso, the immediate placement proviso, is at issue in this case:
"notwithstanding
any general or special law to the contrary, [HLC] shall immediately provide
shelter for up to 30 days to families who appear to be eligible for shelter
based on statements provided by the family and any other information in the
possession of [HLC] but who need additional time to obtain any third-party
verifications reasonably required by [HLC]."  
St. 2023, c. 28,
§ 2, line item 7004-0101. 
Applicants who receive shelter under the immediate placement proviso are
known as "presumptively eligible." 
The Legislature has included the immediate placement proviso in the
budget using identical or substantially identical language each year since
2005.[7]
      Beginning in 2012, HLC and its
predecessor, the Department of Housing and Community Development (DHCD)
(collectively, agencies), have required that groups applying for emergency
assistance shelter must establish at the time of initial application that they
are a family, and that they do so by providing third-party verification of each
family member's identity and relationship to one another.[8]  In addition, the agencies have required
third-party verification that at least one adult member of the family is a
Massachusetts resident.[9]  Not all
families possess such third-party verification when they make their initial
application for emergency assistance shelter. 
On occasion, the agencies have nonetheless been able to verify the
information through other means and have accordingly provided the family with
emergency assistance shelter.  At other
times, the agencies have not been able to do so, with the result that the
family has been deemed ineligible and denied emergency assistance shelter.
      The underlying class action suit was
commenced in 2016, asserting various causes of action (described in the margin)
based on the agencies' administration of the housing assistance program.[10]  See Garcia, 480 Mass. at 743.  Ultimately, after extensive litigation,
including an interlocutory appeal to this court, the parties reached a partial
settlement that resolved all issues except "whether verifications of
identity, familial relationship, and Massachusetts residency may be required for
an applicant to be presumptively eligible for [e]mergency [a]ssistance
shelter."[11]  The parties presented
that issue for resolution through cross motions for summary judgment on
stipulated facts.  While reserving their
right to present extrinsic evidence should the judge determine it necessary to
interpret the statute, the parties took the position below -- as they do here
on appeal -- that the statute could be interpreted on its face without resort
to extrinsic evidence of the agencies' historic practices and understanding.[12]
      The judge concluded that the immediate
placement proviso did not permit the agencies to require third-party
verification of Massachusetts residency. 
However, the judge accepted HLC's argument that the word "families"
could be read separately from the phrase "who appear to be eligible,"
and concluded that the agencies were permitted to require third-party
verification (a) that an applicant group is a "family,"
(b) of its members' relationships to each other, and (c) of an
applicant's identity, as part of verifying family status, except if the
applicant is a pregnant woman.  A
declaratory judgment entered consistent with the judge's rulings, and it is
from that judgment that the cross appeals before us now stem.  We review a ruling on cross motions for
summary judgment de novo.  See Federal
Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637 (2012).
      Discussion.  As noted at the outset, the question is
whether the immediate placement proviso permits HLC to require families to provide,
at the time of initial application, third-party verification of certain
information to establish their eligibility for emergency assistance
shelter.  This is a question of statutory
interpretation because, although the immediate placement proviso is located in
a budgetary line item, it has the force of law. 
See Garcia, 480 Mass. at 740.  
"[A] statute
must be interpreted according to the intent of the Legislature ascertained from
all its words construed by the ordinary and approved usage of the language,
considered in connection with the cause of its enactment, the mischief or
imperfection to be remedied and the main object to be accomplished, to the end
that the purpose of its framers may be effectuated" (citation omitted).
Harvard Crimson,
Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749
(2006).  "[W]here the language of a
statute is plain and unambiguous, it is conclusive as to legislative
intent."  Hartnett v. Contributory
Retirement Appeal Bd., 494 Mass. 612, 616 (2024), quoting Six Bros., Inc. v.
Brookline, 493 Mass. 616, 622 (2024).
      We begin with a close reading of the
proviso's language, see Matter of the Estate of Mason, 493 Mass. 148, 151
(2023), which, as a matter of convenience, we repeat here:
"notwithstanding
any general or special law to the contrary, [HLC] shall immediately provide
shelter for up to 30 days to families who appear to be eligible for shelter
based on statements provided by the family and any other information in the
possession of [HLC] but who need additional time to obtain any third-party
verifications reasonably required by [HLC],"
St. 2023, c. 28,
§ 2, line item 7004-0101.[13]  The
proviso instructs that HLC "shall immediately provide shelter," and
the Legislature's use of the word "shall" reflects the imposition of
a nondiscretionary, mandatory obligation. 
See Emma v. Massachusetts Parole Bd., 488 Mass. 449, 454 (2021)
("'shall' indicates the absence of discretion"); Hashimi v. Kalil,
388 Mass. 607, 609 (1983) ("'shall' is ordinarily interpreted as having a
mandatory or imperative obligation"). 
By joining the word "shall" with the word
"immediately," the Legislature coupled the mandatory nature of the
obligation to its temporal execution; the obligation to provide emergency
assistance shelter is to be carried out without delay.  See Webster's Third New International
Dictionary 1129 (2002) ("immediately" means "without interval of
time" or "without delay"). 

      The next phrase of the proviso identifies
which families are entitled to immediate emergency assistance shelter.[14]  In making this identification, the
Legislature eschewed language of definitive certainty.  Instead, families need only
"appear" to be eligible for shelter, and the phrase "families
who appear to be eligible" describes families that seem -- but may not
actually be -- eligible to participate in the emergency housing program.  See Merriam-Webster's Collegiate Dictionary
60 (11th ed. 2020) ("appear" means "to have an outward
aspect" or "seem"); Webster's Third New International Dictionary
103 (2002) ("appear" means "to be taken as:  look, seem").
      A family's appearance of eligibility is to
be "based on statements provided by the family and any other information
in the possession of [HLC]."  St.
2023, c. 28, § 2, line item 7004-0101. 
The immediate placement proviso says nothing about using or requiring
third-party verification to establish a family's appearance of eligibility, and
that omission is presumed to be deliberate because "the expression of one
thing in a statute is an implied exclusion of other things not included in the
statute."  Skawski v. Greenfield
Investors Prop. Dev. LLC, 473 Mass. 580, 588 (2016), quoting Bank of Am., N.A.
v. Rosa, 466 Mass. 613, 619 (2013).  This
presumption is entirely consistent with the proviso's final phrase, which
acknowledges that families applying for emergency assistance shelter may
"need additional time to obtain . . . third-party
verifications" of eligibility criteria. 
See St. 2023, c. 28, § 2, line item 7004-0101. 
      Our close reading of the plain language of
the immediate placement proviso leads us to conclude that the Legislature did
not intend to require that families provide third-party verification of
eligibility at the time of initial application for emergency assistance
shelter.  Instead, the plain language
imposes a mandatory obligation to provide short-term, temporary shelter without
delay to families who appear -- but may not actually be -- eligible, based
solely on their own statements and on information in HLC's possession.  
      Although we need not look beyond the plain
language of the immediate placement proviso, we note that our construction of
the statutory language is consistent with the beneficial purpose of the
statutory scheme administering the emergency assistance program.  See Commonwealth v. Millican, 449 Mass. 298,
305 (2007), quoting Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839
(1986) ("Although we have concluded that the words of the statute are not
ambiguous, 'we should not accept the literal meaning of the words of a statute
without regard for that statute's purpose and history'").  The emergency assistance program attempts to
address the various needs for shelter that may be caused when families find
themselves in dire circumstances whether because of, for example, domestic
violence, natural disaster, fire, or other unexpected catastrophic events.  See G. L. c. 23B, § 30
(program provides "for the prevention of homelessness, temporary shelter
as necessary to alleviate homelessness when [a] family has no feasible
alternative housing available"). 
Our interpretation of the immediate placement proviso avoids erecting
barriers to effectuating the Legislature's intent to prevent homelessness and
to provide emergency, short-term, temporary shelter as necessary.  See id. 
To read the immediate placement proviso otherwise would require families
to produce forms of verification they may not have available to them at a time
of crisis and would run counter to the statutory scheme's beneficial purpose to
provide immediate short-term, temporary shelter to those in need.
      HLC argues that the word
"families," by virtue of its placement at the outset of the proviso,
should be read independently from the dependent adjectival clause that comes
after it.  It follows, according to HLC,
that an applicant group must establish as a threshold matter that it is a
family, and that third-party verification of its family status can be required.  Ordinary principles of grammar defeat this
argument.  See Commonwealth v. LeBlanc,
475 Mass. 820, 822 (2016), citing Rowley v. Massachusetts Elec. Co., 438 Mass.
798, 802 (2003) (court applies "standard rules of grammar when
interpreting statutory language"). 
The word "families" does not stand alone, but rather is followed
immediately without separation by a restrictive dependent adjectival
clause.  See Clark v. Beverly Health
& Rehabilitation Servs., Inc., 440 Mass. 270, 274 (2003) (clause beginning
with "who" is "a clause that modifies the" preceding
nouns).  A dependent adjectival clause
that follows a noun modifies that noun, and the absence of a comma between the
noun ("families") and the dependent clause ("who appear to be
eligible") makes the subsequent clause essential to defining the preceding
noun.  See The Chicago Manual of Style
§§ 5.225, 6.27, at 296, 376 (17th ed. 2017).[15]
      Finally, we acknowledge the competing
policy arguments advanced by both sides. 
On the one hand, HLC points to the safety concerns of bringing adults
and children into close proximity in congregate shelters, and argues that
requiring third-party verification of identity and family relationship before
providing shelter helps to alleviate those concerns.  On the other hand, the plaintiffs argue that requiring
a form of verification that people in crisis may well not possess when they
initially seek short-term, temporary shelter deprives them of the protection
the Legislature intended them to receive when they were at their most
vulnerable.  Both sets of policy concerns
have sound reasons to recommend them. 
However, it is not our task to choose between them because the plain
language of the immediate placement proviso is unambiguous and is accordingly
determinative of the Legislature's intent. 
See Boston Hous. Auth. v. National Conference of Firemen & Oilers,
Local 3, 458 Mass. 155, 164 (2010), superseded by statute on other grounds
("policy benefits . . . cannot trump the intent of the
Legislature, as unambiguously expressed in [a statute]").
      Conclusion.  Under the plain meaning of the immediate
placement proviso, HLC cannot require families seeking emergency assistance
shelter placement to provide third-party verifications at the time of initial
application.  We accordingly reverse the
judgment of the Superior Court insofar as it allows HLC to require third-party
verifications before providing shelter under the immediate placement
proviso.  The judgment is otherwise
affirmed.
So ordered.

footnotes

[1] Individually
and on behalf of all others similarly situated.

[2] Naikis
Cepeda, Dawn Didion, and Jasmin Rivera, individually and on behalf of all
others similarly situated; and Jocelin Gruilart, intervener.

[3] This case
concerns whether third-party verification may be required at the outset of the
emergency housing placement process; it does not implicate verification
requirements at later points.  As a
result, our conclusion here does not prevent HLC from later in the process
requiring third-party verifications for further shelter.  See G. L. c. 23B,
§ 30 (B) (e) (tasking HLC with "verification of all
elements of eligibility" without time restriction).

[4] We
acknowledge the submissions from amici curiae Massachusetts Coalition for the
Homeless, Family Promise North Shore Boston, Women's Lunch Place, and Rosie's
Place; and MLPB and the Health Law Clinic at Suffolk University Law School.

[5] The factual
background is drawn from the stipulated facts upon which the parties based
their cross motions for summary judgment. 
See Boston Globe Media Partners, LLC v. Department of Pub. Health, 482
Mass. 427, 429, 431 (2019) (reciting facts "taken from the parties'
stipulated facts and exhibits" on appeal from ruling on cross motions for
summary judgment, which was "based on the parties' stipulated facts and
exhibits").

[6] When the 1983
act was passed, the Department of Transitional Assistance (formerly known as
the Department of Public Welfare) was responsible for administering the
emergency assistance program.  In 2009,
the Legislature transferred administration of the emergency assistance program
–‑ including emergency assistance shelter –- from the Department of
Transitional Assistance to the Department of Housing and Community Development
(DHCD), effective July 1, 2009.  St.
2009, c. 4, §§ 34-37, 83.  Effective
May 30, 2023, responsibility for the program was transferred to HLC, see
G. L. c. 23B, § 1; St. 2023, c. 7, §§ 102, 120-121,
where it currently remains.

[7] See St. 2023,
c. 28, § 2, line item 7004-0101; St. 2022, c. 126, § 2,
line item 7004-0101; St. 2021, c. 24, § 2, line item 7004-0101; St. 2020,
c. 227, § 2, line item 7004-0101; St. 2019, c. 41, § 2, line
item 7004-0101; St. 2018, c. 154, § 2, line item 7004-0101; St. 2017, c.
47, § 2, line item 7004-0101; St. 2016, c. 133, § 2, line item
7004-0101; St. 2015, c. 46, § 2, line item 7004-0101; St. 2014, c.
165, § 2, line item 7004-0101; St. 2013, c. 38, § 2, line item
7004-0101; St. 2012, c. 139, § 2, line item 7004-0101; St. 2011, c.
68, § 2, line item 7004-0101; St. 2010, c. 131, § 2, line item
7004-0101; St. 2009, c. 27, § 2, line item 7004-0101; St. 2008,
c. 182, § 2, line item 4403-2120; St. 2007, c. 61, § 2, line
item 4403-2120; St. 2006, c. 139, § 2, line item 4403-2120; St. 2005,
c. 45, § 2, line item 4403-2120.

[8] On September
17, 2012, DHCD issued Housing Stabilization Notice 2012-08, which provided:
"individuals
who are members of the family must, during the intake process, provide reliable
information of the identity of each member of the family and the relationship
among the family members.  Because these
basic verifications also provide the relevant information about the family's
residence, Massachusetts residency is an element of basic verification of
identity."
      To similar effect, also in 2012, DHCD issued
a regulation that
"all members
of the [emergency assistance] household shall be residents of the Commonwealth
of Massachusetts and shall demonstrate residency as an element of basic
verification of identity.  A household
must demonstrate qualification as an [emergency assistance] household
. . . by providing basic verification of [(1)] identity and [(2)]
relationship before it can appear eligible for placement pursuant to
[regulations implementing the immediate placement proviso]."
760 Code Mass.
Regs. § 67.02(1)(c) (2012).

[9] Previously,
DHCD required that each member of the group provide third-party verification of
Massachusetts residency.  

[10] The
plaintiffs asserted five claims: 
(1) violation of St. 2016, c. 133, § 2, line item 7004-0101,
by failing to immediately place families that were eligible or apparently
eligible; (2) violation of St. 2016, c. 133, § 2, line item
7004-0101, by failing to place families "as close as possible" to
their home communities, failing to transfer families to placements under twenty
miles from their home communities "at the earliest possible date,"
and failing to use "best efforts" to "ensure that children can
continue in school in the community in which they previously lived";
(3) violation of the Americans with Disabilities Act, as well as
"related state and federal laws," by failing to provide shelter units
that accommodate people with disabilities; (4) violation of Title VIII of
the Civil Rights Act of 1964, 42 U.S.C. § 3604(f), as well as the Fair
Housing Act and associated provisions, 42 U.S.C. §§ 3608(e)(5), 12705,
1437; and (5) violation of G. L. c. 23B, § 30, by failing
to administer the emergency assistance program "in a manner that is 'fair,
just and equitable.'"

[11] Under the
partial settlement, DHCD agreed to revise its list of acceptable third-party
verifications, and to help applicants gather verifications by consulting its
own data systems and by attempting to contact at least two third-party
resources that the applicant identifies as likely to have relevant information.

[12] We agree
with the judge's conclusion that extrinsic evidence is not necessary to
interpret the statutory language at issue here. 

[13] The
introductory clause of the proviso establishes the relationship between the
proviso and other laws, and makes clear that, in the event of conflict, the
provisions of the proviso are to prevail. 
See Mathewson v. Contributory Retirement Appeal Bd., 335 Mass. 610, 614
(1957) ("The words, 'Notwithstanding the provisions of any general or
special law to the contrary,' announce that an indefinite number of
unidentified statutory provisions, if inconsistent, are repealed to the extent
necessary to make [the statute] effective").  As neither party contends that the immediate
placement proviso conflicts with any other law, we need not, and do not,
consider the matter.    

[14] The parties
agree that "family" usually means "household," see
Merriam-Webster's Collegiate Dictionary 452 (11th ed. 2020) ("family"
is "a group of individuals living under one roof" or
"household"); see also Webster's Third New International Dictionary
821 (2002) (same), and that the term as used in the immediate placement proviso
encompasses pregnant women without children, see G. L. c. 23B,
§ 30.  HLC contends, however, that
"families" as used in the immediate placement proviso does not carry
its common meaning of "household." 
Rather, HLC argues, the Legislature used "families" as
shorthand for the population that is the subject of the enabling statute,
G. L. c. 23B, § 30, and is therefore limited to "families
with children and pregnant wom[e]n with no other children."  G. L. c. 23B, § 30.  We disagree. 
Where a statute contains some definitions but does not define the word
at issue, "[i]t is particularly appropriate . . . to interpret
the word according to its common usage." 
Commonwealth v. Palmer, 464 Mass. 773, 778 n.6 (2013).  Here, neither the budget line item nor the
enabling statute defines the term "families," despite that the
statute defines other terms.  See
G. L. c. 23B, § 30.  We
therefore afford "families" its common meaning:  "household."  See Commonwealth v. Zucchino, 493 Mass. 747,
749 n.6 (2024) ("words in a statute are presumed to mean what they
say").

[15] We are also
unpersuaded by HLC's argument that the Legislature's inaction in the face of
the agencies' position and practice since 2012 of requiring certain third-party
verifications at the time of intake can be construed as acquiescence to HLC's
interpretation of the immediate placement proviso.  Where, as here, a statute's plain language is
unambiguous, there is no reason to infer approval of HLC's interpretation from
Legislative inaction, nor do we defer to HLC's interpretation.  See Sutton v. Jordan's Furniture, Inc., 493
Mass. 728, 739 (2024), quoting Sullivan v. Sleepy's LLC, 482 Mass. 227, 232
n.11 (2019) ("no deference is given to an agency's interpretation of a
statute if it is 'contrary to plain language of the statute and its underlying
purpose'").