LENK, J.
**737 Certain low income families in Massachusetts facing the harsh reality of homelessness are served by an emergency shelter program, run, since 2009, by the defendant Department of Housing and Community Development (DHCD). This case is before us on an interlocutory appeal by DHCD of a class-wide preliminary injunction concerning its operation of that shelter program. The preliminary injunction in essence prohibits DHCD from following, in certain circumstances, its stated policy regarding the use of motels.
The plaintiffs are among the roughly 3,500 people currently served by the emergency assistance (EA) program. Their dire circumstances, affecting their families in different ways, give rise to various shelter needs which the program attempts to address. The DHCD in recent years has *949 greatly expanded the number of shelter beds provided across the State, and has used motel placements as a last resort only when overflow needs require it, or in limited exigent circumstances. The plaintiffs contend that, in the process of reducing its reliance upon motels, DHCD has violated Massachusetts statutes by failing promptly to place families in shelters within twenty miles of their home communities or to restore them to those communities as quickly as possible, and has violated the Americans with Disabilities Act (ADA), among other Federal statutes, by failing promptly to accommodate the plaintiffs' or their children's disabilities.
Insofar as relevant to the challenged preliminary injunction, this case concerns those plaintiffs who have recognized needs under the **738 ADA for shelter placements different from the ones in which they are currently housed, but whose needs are as yet unmet. These needs include being closer to medical providers or being placed in a non-congregate setting to accommodate a behavioral, dietary, or other disability. While DHCD has approved transfers to placements accommodating those disability needs "when administratively feasible," it has not yet implemented those transfers, despite the willingness of those affected to accept motel placements.
A Superior Court judge certified the plaintiff class; the class includes every family who is eligible for, and has applied for, emergency shelter, but did not immediately receive a placement that both (1) was within twenty miles of its home community, and (2) satisfied a requested disability accommodation, if any. The judge also certified a subclass, for purposes of the ADA claims, of plaintiffs with a disability or whose child has a disability.
Before the completion of discovery, the plaintiffs sought a class-wide preliminary injunction directing DHCD to use motels as EA placements to the extent necessary (1) to ensure that children are able to continue school in their home communities, (2) promptly to place families within twenty miles of their home communities; and (3) to meet the reasonable accommodations of class members with disabilities. The judge allowed, in part, the motion for a class-wide preliminary injunction and ordered as follows:
"1. Notwithstanding its policy on motels, DHCD shall treat motels and hotels as available placements when implementing approved ADA accommodation requests in the EA program.
"2. If a hotel or motel placement will meet an approved ADA accommodation request for an EA-recipient household, and DHCD cannot provide that accommodation in any other way, then DHCD must place the household in a hotel or motel on at least an interim basis until it provides the accommodation through an approved contracted shelter, or otherwise."
The class-wide preliminary injunction applies to a narrow group within the certified sub-class: those EA participants whose ADA accommodation requests had been approved by DHCD, but not yet implemented, and whose requests could be satisfied by a motel placement. The judge denied the motion for a preliminary injunction for all other class members and on all other claims. DHCD's **739 appeal from the class-wide preliminary injunction is before us on a joint request for direct appellate review.
The judge concluded that DHCD likely had violated three regulations promulgated under the ADA. The first requires public entities to provide reasonable accommodations in order to avoid discrimination on the basis of disability. See 28 C.F.R. § 35.130(b)(7) (2017). The judge assumed that, where DHCD has made an individualized determination to transfer a family in *950 order to accommodate a disability "when administratively feasible," the shelter bed where the family resides in the interim becomes "ADA noncompliant." The judge then concluded that such shelter beds are not "available," within the meaning of DHCD's statutory mandate, which permits the use of motels when a shelter bed is not available. "[W]e are cognizant that time presses sharply on a family with children struggling against destitution," Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 652, 729 N.E.2d 627 (2000), and do not doubt that disability needs among homeless families require urgent accommodation. The judge erred, however, in concluding that any delay in providing an ADA accommodation is a per se violation of law.
The judge concluded also that DHCD likely violated ADA regulations that prohibit public entities from providing services or siting facilities in a manner that has the effect of discriminating on the basis of disability. See 28 C.F.R. § 35.130(b)(1), (4) (2017). This conclusion, however, was premised on a factual predicate that is not supported by the record.
As a result, we conclude, based on the preliminary record, that the plaintiffs have not shown a likelihood of succeeding on their claim that DHCD's motel policy violates the ADA by discriminating on the basis of disability. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106 (1980). Accordingly, the order of preliminary injunction shall be vacated and the matter remanded for further proceedings.[3]
1. Background. a. The EA program. General Laws c. 23B, § 30, requires DHCD to "administer a program of emergency housing assistance to needy families with children and pregnant wom[e]n with no other children ... at locations that are geographically convenient to families who are homeless or at-risk of homelessness." As stated, approximately 3,500 families are served by **740 the EA program; according to DHCD, it is the only Statewide emergency shelter program in the country.
DHCD must administer the EA program "[s]ubject to appropriation." Id. The Legislature appropriates funds for the program through two budgetary line-items, one of which contains a number of provisos; these provisos have the force of law. See St. 2017, c. 47, § 2, line items 7004-0100, 7004-0101; Opinion of the Justices to the Senate, 375 Mass. 827, 834 n.2, 376 N.E.2d 1217 (1978). The transfer proviso states, "if the closest available placement is not within [twenty] miles of the household's home community, the household shall be transferred to an appropriate shelter within [twenty] miles of its home community at the earliest possible date." St. 2017, c. 47, § 2, line item 7004-0101. The placement proviso similarly directs that, "an eligible household that is approved for shelter placement shall be placed in a shelter as close as possible to the household's home community." Id. Pursuant to the education proviso, DHCD shall make "every effort" "to ensure that children receiving services ... shall continue attending school in the community in which they lived before receiving services."[4] Id. Finally, *951 the "motel proviso" requires that "funds shall be expended for expenses incurred as a result of families being housed in hotels due to the unavailability of contracted shelter beds."[5] Id. The authorizing statute also mentions the use of motels in the EA program. See G. L. c. 23B, § 30.
DHCD has promulgated regulations to implement the EA program. See G. L. c. 23B, § 30 (A) ; 760 Code Mass. Regs. §§ 67.00 (2012). Under DHCD's regulations, "[a]n EA household shall be placed in a family shelter when such shelter is available." 760 Code Mass. Regs. § 67.06(3)(b)(1). "The EA household will be placed in an interim placement, such as shelter beyond [twenty] miles or a hotel/motel, only if appropriate [DHCD]-approved family shelter space is not available," and will be transferred to an approved family shelter within twenty miles of its home community **741 at the "earliest date" possible. 760 Code Mass. Regs. § 67.06(3)(e)(1).
The majority of the funding appropriated for the EA program is committed at the beginning of each fiscal year to pay for the cost of family shelters and related services. Because the amount authorized under the budget for a given fiscal year typically is insufficient to cover these costs for one full year, DHCD historically has entered into nine-month contracts with shelter providers, with the expectation that the Legislature will approve an increase in appropriation for the line item;[6] in the past, DHCD has entered into shelter contracts as short as three days in length due to delays in enacting supplemental budgets.
The EA program makes use of three types of family shelters, and uses motels when family shelter beds are unavailable. Congregate shelters serve multiple families and have professional support staff, as well as cooking facilities and common spaces. Scattered-site shelters and co-shelters are apartments leased by DHCD service providers. When DHCD contracts with shelter providers, it pays for a fixed number of each type of shelter unit for a fixed period of time, and is responsible for those costs regardless whether all of the units are ultimately used.
The EA program previously was administered by the Department of Transitional Assistance. That department utilized motels as shelter overflow capacity; it temporarily ended the use of motels between 1996 and 1999, as well as from 2004 through 2007. When DHCD became responsible for administering the EA program in 2009, 842 EA families were placed in motels. According to DHCD, the executive branch has been committed to ending the use of motels since the 1990s, but overflow motel space was necessary to meet increased demand for emergency shelter during the "Great Recession" of 2007-2009.
DHCD contracts with motel providers at a per diem rate for a specific number of days, subject to room availability, and only pays if a motel room is actually used. Beginning in September, 2013, DHCD has expanded its family shelter capacity, thereby reducing reliance on motels. DHCD views family shelters as a superior form of placement due to their relative safety and the ease with which DHCD can provide *952 support and services in family shelters. From September, 2013, through June, 2017, DHCD added **742 1,664 new family shelter units, an eighty-two per cent increase in the Commonwealth's family shelter capacity. Nearly thirty per cent of the increase took place in Boston, which is the area of greatest need. The number of families in the EA system who were placed in motels dropped from approximately 500 in June, 2016, to forty-two in July, 2017. At the time of filing, DHCD had a contract with only one motel.[7]
As a matter of policy, DHCD no longer assigns new EA families to motel placements, other than under a "rare exception." While the record does not contain a definition of "rare exception," in its brief, and at oral argument, DHCD has acknowledged that it cannot entirely take motels off the table, as it were, and may need to place a family in a motel when the family is physically unable to access any vacant shelter units.
b. Disability accommodation in the EA system. Title II of the ADA requires a public entity, such as DHCD, to provide reasonable accommodations to persons with disabilities where necessary to avoid discrimination. See 42 U.S.C. §§ 12131 - 12132 ; 28 C.F.R. § 35.130(b)(7). Once a family is deemed eligible for the EA program, DHCD asks whether any family member has a disability. DHCD also inquires as to factors affecting a family's placement needs; this inquiry includes whether the family has any needs related to disability. If a family indicates that one or more of its members has a disability, DHCD provides the family a form to request a disability accommodation. The family can request a number of accommodations including, inter alia, transfer to a location closer to a medical provider; permission to have a service animal; non-congregate housing for a child whose disability requires a private environment; and physical modifications, such as a wheelchair ramp or grab bars.
After receiving a request for an ADA accommodation, DHCD either makes a determination within thirty days, or engages in an "interactive process" with the EA participant to determine a reasonable accommodation. DHCD approves a variety of accommodations, including requests for transfers to particular locations and to non-congregate housing, "when administratively feasible, taking into account the availability of placements and the level of need as compared to other granted accommodations of other participants." The record indicates that when DHCD approves **743 such a transfer, it notifies the EA family that the transfer will take place "when administratively feasible."
c. Prior proceedings. The named plaintiffs filed their first amended complaint in December, 2016, on behalf of themselves and all others similarly situated. The complaint contains claims that the DHCD (1) failed immediately to place families "who are eligible for immediate placement," in violation of St. 2016, c. 133, § 2, line item 7004-0101; (2) "failed to place" families as "close as possible" to their home communities, to "transfer families to within [twenty] miles of their home communities 'at the earliest possible date,' " and to use " 'best efforts' to ensure children can continue in school in their prior community," in violation of St. 2016, c. 133, § 2, line item 7004-0101; (3) has engaged in "discrimination against families that include a qualified person with a disability" due to the insufficient number of family shelter units that can accommodate their disability needs in *953 their home communities, in violation of the ADA and "related [S]tate and [F]ederal laws"; (4) has violated Title VIII of the Civil Rights Act of 1964, 42 U.S.C. §§ 3604(f), and the Fair Housing Act and related provisions, 42 U.S.C. §§ 3608(e)(5), 12705, and 1437; and (5) has failed to administer the EA program in a manner that is "fair, just and equitable," in accordance with G. L. c. 23B, § 30. The complaint asserts that the alleged violations are "occurring in substantial part because the [d]epartment has failed to create enough shelter units in the areas of highest demand and is exacerbating the problem by refusing to use motel rooms to keep families close to their prior communities or to otherwise accommodate the family's needs." The plaintiffs sought class certification, damages, and declaratory and injunctive relief.
In June, 2017, putative class member Maria Prodoscimo successfully moved to intervene; she sought preliminary individualized injunctive relief directing DHCD to transfer her family to a location without stairs in the Greater Boston area. The judge preliminarily found[8] that DHCD had been informed that Prodoscimo's son was scheduled to receive knee surgery that July, that his medical provider recommended that he take residence in a ground-floor apartment, that Prodoscimo's counsel accordingly had requested an ADA accommodation, and that DHCD had not responded to the request. The judge ordered DHCD to transfer the **744 Prodoscimos, by the following day, to a placement that did not require the use of stairs, within the Greater Boston area, and to use a motel if necessary. The judge discussed the question "whether DHCD may adopt a policy refusing to assign families to hotel or motel placements," and concluded that "DHCD's policy choice regarding hotels is not part of the fundamental nature of the EA program authorized and directed by the Legislature."
In July, 2017, the plaintiffs sought an emergency class-wide preliminary injunction that would order DHCD to use motels as EA placements to the extent necessary (1) to ensure that children are able to continue school in their home communities, (2) promptly to place families within twenty miles of their home communities; and (3) to meet the reasonable accommodations of class members with disabilities. The plaintiffs' motion identified additional individuals they claimed had been harmed by DHCD's alleged violations of State and Federal law, and who had not been named in the original complaint. DHCD opposed the plaintiffs' emergency motion for a class-wide preliminary injunction, including class certification. DHCD argued that its motel policy was a reasonable interpretation of its statutory mandate; and that a court order reversing DHCD's policy on motels would result in underutilization of existing shelter spaces, and would cause major disruption to the EA shelter system.
In July, 2017, the judge held a hearing on the motion for an emergency class-wide preliminary injunction, and certified the following class:
"All families who, from December 9, 2016 to the date of Final Judgment applied for or were residing in the EA shelter system (or had been granted a Temporary Emergency Shelter Interruption (TESI) ) and met the Eligibility Requirements but did not Immediately receive a placement that both (1) was within [twenty] miles of the household's home community unless the household requests otherwise and (2) allowed a *954 requested accommodation, if any, for a Qualified Person With A Disability Or A Handicap. For Counts 3 and 4, the court also certifies a subclass of families who include a Qualified Person With A Disability Or A Handicap.[9 ]
"For purposes of class definition:
**745 " 'Eligibility Requirements' are the requirements for placement under applicable law, including St. 2016, c. 133, [§] 2, [line] item 7004-0101, (and 2017 H. 1, [§] 2, [line] item 7004-0101), G. L. c. 23B, § 30 and implementing regulations found at 760 Code Mass Regs. [§§] 67.00 ...
" 'Immediately,' for class definition purposes only, means 'on the day of application.'
" 'a Qualified Person With A Disability Or A Handicap' shall have the same meaning as in Title II of the Americans with Disabilities Act, 42 U.S.C. [§§] 12131 et seq. ; the Rehabilitation Act, 29 U.S.C. §§ 701 et seq. ; and the Fair Housing Act, 42 U.S.C. [§§] 3604(f), 3608(e)(5), 12705 and 1437." (Emphasis supplied.)
The class-wide preliminary injunction before us only concerns certain members of the certified subclass. On appeal, DHCD has not challenged the class certification.
In August, 2017, while the motion for a class-wide preliminary injunction was under advisement, the plaintiffs filed an emergency motion seeking a preliminary injunction on behalf of eighteen individual class members. These individuals included ten newly identified class members who had requested ADA accommodations which had been approved but which had not yet been implemented.
Following a hearing, the judge allowed, in part, the emergency motion on behalf of these individual class members, prior to issuing the class-wide injunction. He issued a preliminary injunction ordering DHCD immediately to transfer six class members to locations that complied with their ADA accommodation requests, and to use motels if necessary. In so doing, the judge granted relief to all of the plaintiffs whose ADA accommodation requests had been approved but not yet implemented, and who were willing to accept a motel placement. The judge concluded that, "[f]or those Moving Plaintiffs who would be appropriately placed in a motel, the only thing preventing a lawful ADA placement is DHCD's unilateral policy against using funds for motel placement." DHCD did not challenge the issuance of the preliminary injunction on behalf of the individual class members.
In September, 2017, the judge allowed, in part, the plaintiffs' emergency motion for a class-wide preliminary injunction, and **746 issued the order that is now before us. The judge stated that, "[t]he record in this case to date focuses more upon DHCD's policies themselves, than upon application of those policies." He explained that he had "considered the factual submissions on the Individual Motion [on behalf of certain class members] in deciding the [class-wide] Motion, as those submissions shed light on DHCD's policies and the impacts upon EA recipients."
The class-wide preliminary injunction provides relief only to those plaintiffs whose ADA accommodations had been approved. The preliminary injunction orders that:
*955 "1. Notwithstanding its policy on motels, DHCD shall treat motels and hotels as available placements when implementing approved ADA accommodation requests in the EA program.
"2. If a hotel or motel placement will meet an ADA accommodation request for an EA-recipient household, and DHCD cannot provide that accommodation in any other way, then DHCD must place the household in a hotel or motel on at least an interim basis until it provides the accommodation through an approved contracted shelter, or otherwise."
Recognizing the need for discovery and a full adjudication on the merits, the judge denied preliminary relief on the plaintiffs' claims that DHCD had violated the education and transfer provisos, and its duty to administer the EA program "in a fair, just and equitable manner," in accordance with G. L. c. 23B, § 30 ; that portion of the motion was dismissed without prejudice to refiling on a more complete record.
In October, 2017, DHCD filed an emergency motion for reconsideration; the plaintiffs opposed the motion. The motion was denied. DHCD simultaneously appealed, pursuant to G. L. c. 231, § 118, and sought a stay of the preliminary injunction before a single justice of the Appeals Court; the petition was allowed, and the requested stay was issued in December, 2017. The plaintiffs appealed from the order allowing that petition, and the two appeals were consolidated in the Appeals Court. In March, 2018, we allowed the parties' joint application for direct appellate review.
2. Discussion. a. Standard of review. We review the allowance of a preliminary injunction to determine whether a motion judge abused his or her discretion. See **747 Packaging Indus. Group, Inc., 380 Mass. at 615, 405 N.E.2d 106. The party seeking a preliminary injunction must show "(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the [moving party's] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [nonmoving party] in granting the injunction." Loyal Order of Moose, Inc., Yarmouth Lodge # 2270 v. Board of Health of Yarmouth, 439 Mass. 597, 601, 790 N.E.2d 203 (2003), quoting Tri-Nel Mgt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219, 741 N.E.2d 37 (2001). Where a party seeks to enjoin government action, the judge also must "determine that the requested order promotes the public interest, or, alternatively, that the equitable relief will not adversely affect the public." Loyal Order of Moose, Inc., Yarmouth Lodge # 2270, supra, quoting Commonwealth v. Mass. CRINC, 392 Mass. 79, 89, 466 N.E.2d 792 (1984).
"In conducting our review, we decide 'whether the judge applied proper legal standards and whether there was reasonable support for his evaluation of factual questions.' " Fordyce v. Hanover, 457 Mass. 248, 256, 929 N.E.2d 929 (2010), quoting Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 741, 897 N.E.2d 548 (2008). On review, a motion judge's "conclusions of law are subject to broad review and will be reversed if incorrect." Fordyce, supra, quoting Packaging Indus. Group, Inc., 380 Mass. at 616, 405 N.E.2d 106. "[W]here, as here, the judge's findings are based not on an assessment of witness credibility but 'solely on documentary evidence[,] we may draw our own conclusions from the record.' " U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 427, 5 N.E.3d 882 (2014), quoting Packaging Industries Group, Inc., supra.
b. The preliminary injunction. The class-wide preliminary injunction granted relief only to those class members whose *956 ADA accommodation requests had been approved by DHCD, but had not yet been implemented. Specifically, it ordered DHCD to place EA participants with approved ADA accommodations in motels, if only a motel placement could satisfy a family's accommodation needs. As discussed, when DHCD approves a transfer to satisfy an ADA accommodation request, it notifies the EA participant that the transfer will take place "when administratively feasible." The judge presumed that if an EA participant had requested a transfer as part of an ADA accommodation, and DHCD agreed to grant the transfer "when administratively feasible," then the shelter unit where the EA participant resides in the interim is "ADA noncompliant." The judge then concluded **748 that "the plaintiffs are likely to prove that an ADA-noncompliant shelter is not 'available' for purposes of the Motel Proviso." The judge therefore determined that, in such circumstances, DHCD must meet the ADA accommodation with a motel placement. See St. 2017, c. 47, § 2, line item 7004-0101 ("funds shall be expended for expenses incurred as a result of families being housed in hotels due to the unavailability of contracted shelter beds" [emphasis supplied] ).
c. Likelihood of success on the merits. Title II of the ADA prohibits a public entity such as DHCD from discriminating against a "qualified individual with a disability" on the basis of that individual's disability. See Fry v. Napoleon Community Schs., --- U.S. ----, 137 S.Ct. 743, 749, 197 L.Ed.2d 46 (2017) ; Tennessee v. Lane, 541 U.S. 509, 513, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) ; 42 U.S.C. §§ 12131 - 12132. The ADA does not require States to provide particular services but, rather, prohibits States from discriminating on the basis of disability in the provision of existing services. See Rodriguez v. New York, 197 F.3d 611, 618 (2d Cir. 1999), cert. denied, 531 U.S. 864, 121 S.Ct. 156, 148 L.Ed.2d 104 (2000).
The Department of Justice has promulgated regulations implementing Title II. See 28 C.F.R. § 35.130. The judge concluded that DHCD's motel policy likely violates 28 C.F.R. § 35.130(b)(7), which requires public entities to make reasonable accommodations to avoid discrimination on the basis of disability. His conclusion, however, rested on the incorrect assumption that any delay in providing a reasonable accommodation is per se unlawful. The judge also concluded that DHCD's motel policy likely violates two other regulations, which prohibit public entities from providing services or siting facilities in a manner that has the effect of discriminating on the basis of disability. See 28 C.F.R. § 35.130(b)(1), (4). His conclusion with regard to these two regulations was premised on a factual predicate that is not supported by the record.
i. Reasonable accommodation. A public entity must make reasonable modifications to its "policies, practices, or procedures," otherwise known as reasonable accommodations,[10] when necessary to avoid discrimination on the basis of disability. See Fry, 137 S.Ct. at 749, quoting 28 C.F.R. § 35.130(b)(7). "[I]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed **749 its benefits." Henrietta D. v. Bloomberg, 331 F.3d 261, 280 (2d Cir. 2003), cert. denied, 541 U.S. 936, 124 S.Ct. 1658, 158 L.Ed.2d 356 (2004), quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995). The determination whether an accommodation is reasonable is fact-specific, *957 and made on a case-by-case basis. Dean v. University at Buffalo Sch. of Med. & Biomed. Sciences, 804 F.3d 178, 189 (2d Cir. 2015). A defendant, however, need not provide even a facially reasonable accommodation that would "fundamentally alter the nature of the service, program, or activity." See ids="4357453" index="55" url="https://cite.case.law/f3d/804/178/#p189">id. at 187, quoting Powell v. National Bd. of Med. Examiners, 364 F.3d 79, 88 (2d Cir. 2004). See 28 C.F.R. § 35.130(b)(7). A plaintiff can establish a violation of the ADA by showing that his or her request for a reasonable accommodation was denied. B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016).
As discussed, the judge's conclusion rested on the premise that, once DHCD has approved a requested transfer based on disability needs, the shelter unit where a family resides in the meantime is "ADA noncompliant." DHCD, however, has decided that when an EA participant requests a transfer to satisfy a disability need, a transfer "when administratively feasible" is a reasonable accommodation. The plaintiffs here do not directly challenge individual accommodations that have been approved by DHCD. The judge nonetheless overrode DHCD's determination in presuming that only an immediate transfer would constitute a reasonable accommodation for the affected class members. He erred in making this determination on a class-wide basis and on the limited preliminary record. The ADA requires an individualized and fact-specific inquiry as to what constitutes a reasonable accommodation. See PGA Tour, Inc. v. Martin, 532 U.S. 661, 688, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) ; National Fed'n of the Blind v. Lamone, 813 F.3d 494, 508 (4th Cir. 2016).
We do not doubt that, in some instances, DHCD's delay in providing an approved ADA accommodation may be unreasonable. "[U]nreasonable delay may amount to a failure to provide reasonable accommodations." Valle-Arce v. Puerto Rico Ports Auth., 651 F.3d 190, 200-201 (1st Cir. 2011). "[T]here are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable under the ADA.' " Mogenhan v. Napolitano, 613 F.3d 1162, 1168 (D.C. Cir. 2010), quoting **750 Mayers v. Laborers' Health & Safety Fund of N. Am., 478 F.3d 364, 368 (D.C. Cir. 2007).[11] DHCD cannot comply with its ADA obligations by granting putative accommodations, and then failing to implement them within a reasonable time. Like the determination whether an accommodation is reasonable, however, the question whether a delay is unreasonable is fact-specific. See Dean, 804 F.3d at 189 ; Selenke v. Medical Imaging of Colo., 248 F.3d 1249, 1262-1263 (10th Cir. 2001). Determining whether unreasonable delay has occurred depends on the specific circumstances, including the length of delay, and whether the defendant has provided alternative accommodations in the interim. Selenke, supra. See id. at 1263 (employer did not violate ADA in delaying reasonable accommodation where it provided interim accommodations); Terrell v. USAir, 132 F.3d 621, 628 (11th Cir. 1998) (same).[12] *958 DHCD construes "administratively feasible" to mean the time when a shelter unit that meets an approved accommodation becomes vacant. There may well be instances, however, in which only an immediate transfer would constitute a reasonable accommodation. In such a case, waiting until it is "administratively feasible" to implement the transfer may deny an EA family a reasonable accommodation. As DHCD recognizes, it must make exceptions to its general policy against reliance on motels, as, for example, when a family is unable physically to access any vacant shelter units; at oral argument before us, DHCD asserted that it takes whatever measures are necessary to ensure all placements, whether interim or permanent, permit all family members physical access to the shelter unit.[13]
In any event, the judge erred in concluding that the preliminary **751 injunction would not "fundamentally alter" the EA program, because the order's first paragraph requires DHCD to treat motels as "available" when implementing ADA accommodations. See 28 C.F.R. § 35.130(b)(7). The motel proviso states that "funds shall be expended for expenses incurred as a result of families being housed in [m]otels due to the unavailability of contracted shelter beds." See St. 2017, c. 47, § 2, line item 7004-0101. The judge interpreted this statutory language to require DHCD to use motels in the EA program when contracted shelter beds are unavailable and, as discussed, erroneously concluded that shelter beds that do not immediately meet an identified disability need are "unavailable." DHCD, by contrast, interprets the motel proviso simply to authorize the use of motels when shelter beds are not available. See 760 Code Mass. Regs. § 67.06(3)(e). Because the motel proviso states that "funds shall be expended," not that "motels shall be used," DHCD's interpretation of its statutory mandate is reasonable, and is entitled to deference.[14] See Peterborough Oil Co. v. Department of Envtl. Protection, 474 Mass. 443, 449, 50 N.E.3d 827 (2016). The judge's order requiring DHCD to treat motels as always "available" when implementing ADA accommodations therefore conflicts with *959 DHCD's reasonable interpretation of its statutory mandate, which authorizes the use of **752 motels only if family shelter space is unavailable. Cf. Bay Area Addiction Research & Treatment, Inc. v. Antioch, 179 F.3d 725, 734 (9th Cir. 1999) ( Title 28 C.F.R. § 35.130 [b][7] "requires reasonable modifications where necessary to avoid discrimination unless such modifications would fundamentally alter the statute in question").[15]
For the foregoing reasons, the plaintiffs have not shown a likelihood of establishing, on a class-wide basis, that an immediate transfer to a motel would be a reasonable accommodation, and thus required by 28 C.F.R. § 35.130(b)(7). A fuller record would be required to determine whether DHCD unreasonably has delayed implementing ADA accommodations that it has approved, and whether those delays are a result of DHCD's policy of transferring EA participants with disabilities only when "administratively feasible."[16]
**753 ii. Discriminatory provision of service and placement of facilities. The judge concluded that DHCD's motel policy likely violates two additional ADA regulations. See 28 C.F.R. § 35.130(b)(1)(ii), (iii) (public entity may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others" or "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others"); 28 C.F.R. § 35.130(4)(i)-(ii) ("A public entity may not, in determining the site or location of a *960 facility, make selections ... [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or ... [t]hat have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities").
The judge's conclusion concerning both regulations rested on his finding that "DHCD's policy of denying motel placements has shifted resources toward contracted shelter beds that present unique problems for persons with disabilit[ies] who need to visit their treatment providers. To that extent, the resulting array of services is less suited to (i.e. less beneficial for) persons with disabilities than non-disabled persons." The record, however, does not support this finding. See Fordyce, 457 Mass. at 256, 929 N.E.2d 929.[17] The record shows only that DHCD has shifted resources from motels to shelter beds. It is silent as to whether motels generally provide better access to the treatment providers of EA participants with recognized disability needs. Nor does the record show whether the shift towards shelter beds has benefited EA participants without disabilities more than those with disabilities.[18] A **754 fuller record would be needed in order to sustain the judge's conclusion. Accordingly, the plaintiffs have not established a likelihood of showing that DHCD discriminated on the basis of disability by violating 28 C.F.R. § 35.130(b)(1) and (4).[19] *961 3. Conclusion. Given that the plaintiffs have not shown a likelihood of succeeding on their claim that DHCD's motel policy violates the ADA by discriminating on the basis of disability, we do not reach the question whether the preliminary injunction appropriately balances the irreparable harm to each party, or promotes the public interest. "[T]he preliminary injunction cannot survive if the plaintiffs are unlikely to succeed on the merits." Fordyce, 457 Mass. at 266-267, 929 N.E.2d 929. See Packaging Indus. Group, Inc., 380 Mass. at 617, 405 N.E.2d 106.
The order granting preliminary injunctive relief to the plaintiffs **755 is vacated and set aside. The matter is remanded to the Superior Court for further proceedings.
So ordered.
GANTS, C.J. (dissenting, with whom Budd, J., joins).
Under the Americans with Disabilities Act (ADA), the Department of Housing and Community Development (DHCD) has an obligation to make reasonable accommodations when providing emergency shelter to individuals with disabilities. See 42 U.S.C. §§ 12131 - 12132 ; 28 C.F.R. § 35.130(b)(7) (2017). The court today acknowledges this obligation, stating that DHCD must provide such accommodations "within a reasonable time." Ante at ----, 108 N.E.3d at ----. It also acknowledges that DHCD's current policy of transferring families that have requested disability-related accommodations only when "administratively feasible" is insufficient to satisfy this obligation, because in some cases it may effectively "deny ... a reasonable accommodation." Ante at ----, 108 N.E.3d at ----. Nevertheless, the court chooses to leave DHCD's policy undisturbed. The court concludes that, because a delay in providing an accommodation is not necessarily an ADA violation, and because the Superior Court judge incorrectly assumed otherwise, the order of preliminary injunction must be vacated in its entirety. Ante at ----, 108 N.E.3d at ----. I disagree. Because DHCD is obligated under the ADA to provide accommodations within a reasonable time, and because its current policy falls short of that obligation, I would not vacate the order of preliminary injunction. Rather, I would exercise our authority to modify the order, so that, in circumstances where (1) DHCD has determined that a family's current shelter does not accommodate its disability-related needs, but (2) DHCD cannot "within a reasonable period of time" transfer the family to a shelter that does, and (3) a hotel or motel would provide the required accommodation, DHCD must place that family in a hotel or motel until a shelter that can accommodate the family's needs becomes available. Such an order would respect DHCD's policy of using hotels and motels only as a last resort, while also respecting DHCD's obligation under the ADA to provide reasonable accommodations for homeless families with disability-related needs.
Title II of the ADA prohibits public entities from discriminating on the basis of disability when providing services. See 42 U.S.C. §§ 12131 - 12132. A Federal regulation implementing Title **756 II, 28 C.F.R. § 35.130(b)(7), requires public entities to make "reasonable modifications in [their] policies, practices, or procedures," where necessary to avoid disability-based discrimination, provided that such modifications do not "fundamentally alter the nature of the service, program, or activity" provided. In administering the Emergency Assistance (EA) program, DHCD allows families with disability-related needs to request a transfer to another shelter if their current shelter does not accommodate their needs. If approved, these transfers are effectuated when "administratively feasible." For some families, a hotel or motel may provide the requested accommodation *962 because, for example, it has elevator access, or is closer to a medical provider, or provides a more private environment. But, because DHCD's current policy is to use hotels and motels only as a last resort, when no family shelters are available, DHCD does not transfer these families to hotels or motels; instead, these families must remain in their current shelters without accommodation until a DHCD-approved family shelter becomes available. In short, DHCD will only transfer families when it is "administratively feasible," and under its current policy a transfer is not "administratively feasible" if the only available placement would be in a hotel or motel. The plaintiffs contend that, for these reasons, DHCD's motel policy represents a failure to provide reasonable accommodations, in violation of Federal law.
In granting the plaintiffs' motion for a preliminary injunction, the Superior Court judge agreed, concluding that DHCD's motel policy likely violated 28 C.F.R. § 35.130(b)(7). The court rejects this conclusion, claiming that it "rested on the incorrect assumption that any delay in providing a reasonable accommodation is per se unlawful." Ante at ----, 108 N.E.3d at ----. The court emphasizes that whether an accommodation is "reasonable" under the ADA requires an individualized, fact-specific inquiry, and that -- although an unreasonable delay in providing an accommodation may itself constitute a failure to provide reasonable accommodation -- whether a delay is "unreasonable" also requires an individualized, fact-specific inquiry. Ante at ----, 108 N.E.3d at ----. Thus, the court concludes that it was error for the judge to "presum[e] that only an immediate transfer would constitute a reasonable accommodation for the affected class members." Ante at ----, 108 N.E.3d at ----.
And indeed it would have been error, if that was what the judge had in fact presumed. But I do not believe he did. On the contrary, in concluding that the plaintiffs were likely to establish an ADA
**757 violation, the judge emphasized DHCD's substantial delay in effectuating approved transfers, writing: "DHCD is aware of, and has approved, requests for ADA accommodation for many class members, without actually providing the accommodation for many months -- sometimes more than six months." In ordering the preliminary injunction, the judge also emphasized that, although DHCD "does not have to use a motel" to comply with the ADA, it must nevertheless provide "timely accommodation[s]" (emphasis added) -- not immediate accommodations -- for families with disability-related needs.[1]
DHCD, for its part, seems to have inferred that the judge intended to require immediate transfers based on the wording of his order, which states that, under certain circumstances, "DHCD must place the household in a hotel or motel on at least an interim basis." The order does not specify how promptly DHCD must make such a placement, and DHCD has alleged that, in the month following its issuance, several *963 families have requested immediate transfers to motels, which DHCD has effectuated in order to avoid being held in contempt. I am not convinced that this is what the judge intended.[2]
Having said that, the preliminary injunction as currently worded **758 is flawed because it is ambiguous. I agree with the court that the ADA does not require DHCD to provide an accommodation as soon as it is requested, and that, to the extent that the preliminary injunction seems to require immediate transfers to a hotel or motel, it is overbroad. This does not mean, however, that the plaintiffs are entitled to no preliminary relief at all. As stated, the judge premised his conclusion that DHCD's policy likely violated 28 C.F.R. § 35.130(b)(7) on his factual finding that DHCD had failed to provide requested accommodations for "many months." Implicit in his conclusion, then, was a determination that DHCD's delay in providing accommodations was, in many cases, "unreasonable" -- which, as the court recognizes, ante at ----, 108 N.E.3d at ----, would itself constitute a failure to provide reasonable accommodations in violation of Federal law. See Valle-Arce v. Puerto Rico Ports Auth., 651 F.3d 190, 200 (1st Cir. 2011) ("[U]nreasonable delay [in providing accommodations] may amount to a failure to provide reasonable accommodations"). This conclusion was not, in my view, an abuse of discretion. See Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 615, 405 N.E.2d 106 (1980) ("[I]n reviewing the granting or denial of a preliminary injunction, the standard is whether the [lower] court abused its discretion" [citation omitted] ). Nor was it an abuse of discretion to conclude that denial of a preliminary injunction would result in irreparable harm to the plaintiffs or that such risk outweighs the potential harm to DHCD in granting the injunction. See id. at 617, 405 N.E.2d 106.
I would therefore modify the order of preliminary injunction, rather than vacate it entirely, and clarify that DHCD need not provide an accommodation immediately, but must provide it within a reasonable time. See G. L. c. 231, § 118 (court has authority to "affirm, modify, [or] vacate" order of preliminary injunction on appeal). Specifically, I would modify the second paragraph of the order to state:
"2. If a hotel or motel placement will meet an ADA accommodation request for an EA-recipient household, and DHCD cannot within a reasonable period of time provide that accommodation in any other way, then DHCD must place the household in a hotel or motel on at least an interim basis until it provides the accommodation through an approved contracted shelter, or otherwise."
**759 So modified, the preliminary injunction would allow DHCD to maintain its policy of using hotels and motels only as a last resort. This is because DHCD would be *964 required to place a family in a hotel or motel only under certain narrowly defined circumstances: first, if DHCD has approved a family's request for a transfer as a reasonable accommodation (meaning that DHCD has itself determined that the family's current shelter is not accommodating its needs); second, if DHCD is not able, within a reasonable time, to provide the requested accommodation through a DHCD-approved family shelter; and third, if placement in a hotel or motel would provide the requested accommodation. Moreover, DHCD would be required to place that family in a hotel or motel only on an interim basis, until DHCD is able to provide the requested accommodation through a family shelter.
For these reasons, the preliminary injunction would not require DHCD to "fundamentally alter" the EA program. 28 C.F.R. § 35.130(b)(7). The court writes that the judge's preliminary injunction would " 'fundamentally alter' the EA program" -- placing it outside the scope of what is required under Federal law -- because it "requir[es] DHCD to treat motels as 'available' when implementing ADA accommodations." Ante at ----, 108 N.E.3d at 958. But under the modified terms of the preliminary injunction DHCD would only be required to treat motels as "available" where a family is entitled to accommodations under the ADA and there is no available family shelter that will provide the required accommodations within a reasonable time. Thus, if DHCD has approved a family's request for a transfer, and there are two possible placements that would accommodate the family's needs within a reasonable time -- a motel and a family shelter -- DHCD could still implement its stated preference for family shelters and place the family in the shelter rather than the motel. As the judge stated, "[o]nly if DHCD cannot find an alternative to motel placement that will accommodate an approved ADA request, must it use a motel."[3] And, even in those limited cases where it would have to place a family in a hotel or motel, DHCD would not need to do so longer than necessary: as soon as a family shelter that provides the requested accommodation becomes available, DHCD would be permitted to transfer the family out of the hotel or motel and into that shelter.
**760 Thus, the preliminary injunction would allow DHCD to follow its stated policy and to use motels only as a last resort.[4] What it would not allow is for DHCD to ignore its obligations under the ADA. The motel proviso requires that "funds shall be expended for expenses incurred as a result of families being housed in hotels due to the unavailability of contracted shelter beds." St. 2017, c. 47, § 2, line item 7004-0101. Although this proviso does express a legislative preference for contracted family shelters, authorizing the use of motels only where such shelters are "unavailable," I agree with the judge that the Legislature did not mean for DHCD to refuse to transfer a family to a hotel or motel where *965 doing so is the only way that it can fulfil its obligations under the ADA. Where DHCD has approved a family's request for a transfer, because it has determined that the family's current shelter is not accommodating its needs, then that shelter must, after a reasonable time, be considered "unavailable" within the meaning of the proviso, because to keep the family in that shelter would violate Federal law. Accordingly, requiring DHCD to transfer families to a hotel or motel, where such transfer would constitute a reasonable accommodation, and where DHCD is not able to provide that accommodation within a reasonable time in any other way, is not contrary to the motel proviso, and would not "fundamentally alter" the EA program.
Moreover, the preliminary injunction would not foreclose the individualized, fact-specific determinations that are required under the ADA. This is because relief under the order would be limited to circumstances where DHCD, by approving a requested transfer, has already made the individualized determination that a family's disability-related needs are not being accommodated in its current shelter. As part of this determination, DHCD would also have to ascertain how promptly such a transfer must be effectuated in order to constitute "reasonable accommodation" under the ADA. As the court recognizes, although an accommodation **761 must be provided within a reasonable time in order to be considered reasonable, what constitutes "a reasonable time" will vary depending on the specific circumstances. Ante at ----, 108 N.E.3d at ----. For example, if a family has requested a transfer to a wheel-chair accessible facility because one of its members is confined to a wheel-chair and is forced to crawl up the stairs in the family's current shelter, a prompt, if not immediate, transfer may be required to constitute a reasonable accommodation. But, if a family has less urgent needs -- for example, if it has requested a transfer in order to be closer to a medical provider that it must visit twice a week -- there may be greater leeway. Making these determinations should be feasible for DHCD, given that, as the court notes, it already engages in an "interactive process" with families in the EA program to determine what would be a reasonable accommodation in each case. Ante at ----, 108 N.E.3d at ----. And, if the plaintiffs believe that DHCD has erred in determining what constitutes a reasonable accommodation, and therefore has not provided the accommodation "within a reasonable period of time," they can ask the court to rule on that issue on a case-by-case basis.[5]
In vacating the order of preliminary injunction in its entirety, the court today reaches a conclusion that is in tension with its own reasoning. The court recognizes that DHCD has an obligation under the ADA to provide reasonable accommodations, and that in order to be reasonable those accommodations must be provided "within a reasonable time." Ante at ----, 108 N.E.3d at ----. It recognizes that that obligation is "nondiscretionary." Ante at note 13. And it recognizes that DHCD's current policy falls short of that obligation. It recognizes that "waiting until [a transfer] is 'administratively feasible' ... may deny [a] ... family a reasonable accommodation," and that in some cases DHCD "must make exceptions to its general policy against reliance on motels." Ante at ----, 108 N.E.3d at ----. The court recognizes *966 all of this, but stops short of the apparent conclusion, which is that DHCD cannot refuse to transfer families to hotels or motels where it is the only way to provide a **762 reasonable accommodation.[6] It vacates the order of preliminary injunction based on a single error that, in my view, the Superior Court judge may not even have made. To the extent that there was an abuse of discretion here, it may be remedied with a simple modification of the order. I would therefore exercise the authority, expressly granted to us by statute, to modify the order and thereby ensure that DHCD fulfils its obligations under Federal law. See G. L. c. 231, § 118. For these reasons, I respectfully dissent.

We acknowledge the amicus brief of the Massachusetts Law Reform Institute, the Disability Law Center, and the Center for Public Representation.

The education, placement, and transfer provisos do not apply if a household requests that it not be placed within twenty miles of its home community. See St. 2017, c. 47, § 2, line item 7004-0101. Pursuant to an additional proviso, DHCD "shall use its best efforts to ensure that a family placed by the emergency housing assistance program shall be provided with access to refrigeration and basic cooking facilities." See id.

In July, 2017, for the fiscal year 2018 budget that is at issue here, the Governor vetoed the motel proviso, in conjunction with vetoes of funding for several specifically named housing programs. At the end of October, 2017, the Legislature overrode the Governor's veto.

In fiscal year 2018, for example, the Legislature authorized a supplemental allocation of approximately $19.3 million to the EA budget in April, 2018, a few months before the end of the fiscal year.

DHCD monthly reports for calendar year 2018 indicate that, for the first six months of the year, 4,895 families entered EA programs, of which forty-seven families (one per cent) were placed in motels.

The evidence on which the judge based his preliminary findings of fact does not appear in the record before us.

Counts 3 and 4 of the complaint allege that DHCD has engaged in "discrimination against families that include a qualified person with a disability" due to the insufficient number of family shelter units that can accommodate their disability needs in their home communities, in violation of the ADA and "related [S]tate and [F]ederal laws," and has violated Title VIII of the Civil Rights Act of 1964, 42 U.S.C. § 3604(f).

Title II uses the term "reasonable modification," a term which is interchangeable with "reasonable accommodation," and which represents an identical standard. See McGary v. Portland, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004).

See Groome Resources Ltd., L.L.C. v. Jefferson, 234 F.3d 192, 199 (5th Cir. 2000) (under Federal Fair Housing Act, "denial [of an accommodation] can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial"); Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1017 (7th Cir. 2000) ("unreasonable delay in providing an accommodation can provide evidence of discrimination").

The dissent misapprehends our conclusion regarding the judge's error. According to the dissent, we misread the judge's preliminary injunction to require immediate transfers. See post at ----, 108 N.E.3d at ----. The judge's error, however, lies in his conclusion that, once DHCD agrees to provide an EA family with an ADA accommodation, the EA family's current placement immediately becomes "ADA noncompliant" and therefore is not "available" for purposes of the motel proviso. As the dissent recognizes, such a placement may be considered "available" until an unreasonable time has elapsed. See post at ----, 108 N.E.3d at ----.

We observe that the obligation to provide reasonable accommodations to qualified individuals with disabilities is nondiscretionary under the ADA. See Fry v. Napoleon Community Schs., --- U.S. ----, 137 S.Ct. 743, 749, 197 L.Ed.2d 46 (2017). In prioritizing transfer requests within the EA system, DHCD must be mindful that this mandate supersedes its duties to transfer EA families to within twenty miles of their home communities "at the earliest possible date," and to "make every effort" to keep children in their schools. See St. 2017, c. 47, § 2.

The language of DHCD's regulation requires that families placed in motels comply with requirements during that placement to assist in transfer from an "interim" motel shelter to an approved family shelter. Title 760 Code Mass. Regs. § 67.06(3)(e) provides, inter alia:
"The EA household will be placed in an interim placement, such as shelter beyond [twenty] miles or a hotel/motel, only if appropriate [DHCD]-approved family shelter space is not available. During this interim placement, the EA household must attend the family shelter interview(s) at family shelter(s) specified by the Department. The household shall be advised at the time of placement that:
"1. it will be transferred from a shelter beyond [twenty] miles into an appropriate [DHCD-]approved family shelter within [twenty] miles of its community at the earliest possible date unless the EA household requests otherwise; or
"2. it will be transferred from another interim shelter into an appropriate [DHCD-]approved family shelter at the earliest possible date."

We reject, however, DHCD's claim that it can fulfil its ADA obligations simply by providing some shelter to the plaintiffs, without regard to location. DHCD's "interpretation [of the ADA], to the effect that a violation ... could ... be premised [only] on conduct that resulted in a complete exclusion from programs or a total denial of benefits, is overly narrow." See Shedlock v. Department of Correction, 442 Mass. 844, 854, 818 N.E.2d 1022 (2004). "At some level, the difficulties experienced in attempting to access programs and services become so great -- so laborious, so painful -- that a plaintiff's access has functionally been denied, even if the plaintiff could, at least in theory, get to and from the program or services." Id. at 854-855, 818 N.E.2d 1022. Furthermore, the reasonableness of an accommodation "must be defined with reference to the plaintiff's facial entitlement to benefits." See Henrietta D., 331 F.3d at 282. EA families are facially entitled to be placed as close as possible to their home communities, and in "geographically convenient" locations, when possible; DHCD cannot satisfy its obligations merely by putting roofs over heads, anywhere in the Commonwealth. See G. L. c. 23B, § 30 ; St. 2017, c. 47, § 2, line item 7004-0101; 760 Code Mass. Regs § 67.06(3)(c).

Nothing we say here suggests that a class-wide injunction could not issue to address any unreasonable delays in DHCD's provision of ADA accommodations. The paucity of the record before us, however, renders unwise at present the modification the dissent would impose. On a fuller record, a preliminary injunction that requires the use of a motel when an accommodation otherwise would be unreasonably delayed, such as the dissent proposes, may well be warranted. The current record, however, does not show how many motel placements would be required, and at what expense; the cost of compliance with such an order might force DHCD dramatically and decisively to scale back its family shelter capacity in favor of motels. The extent of this and other potential systemic impacts, and whether such shifts could even go so far as to "fundamentally alter the nature" of the EA program, are simply unknown at this juncture. See 28 C.F.R. § 35.130(b)(7). In addition, because the proposed modification would require DHCD to take what could be significant affirmative action, possibly with unintended adverse consequences, it runs afoul of the principle that a preliminary injunction "ordinarily is issued to preserve the status quo pending the outcome of litigation." Doe v. Superintendent of Schs. of Weston, 461 Mass. 159, 164, 959 N.E.2d 403 (2011).

It is unclear if the plaintiffs submitted evidence to the judge that is not in the record before us, apart from the factual submissions made during the Prodoscimo proceeding, discussed supra.

The judge further found, "[p]lacements of EA recipients with disabilities far from home has resulted in failure to obtain care and treatment, manifestations of treatable and avoidable symptoms (such as mental health episodes) that interfere with activities such as travel to school, hardship (such as climbing stairs against medical advice) and consumption of the household's limited resources to travel for treatment. EA recipients without disabilities do not experience those or similar impediments." To the extent that the judge concluded that DHCD's motel policy has violated 28 C.F.R. § 35.130(b)(1) and (4) by resulting in a disparate impact on EA participants with disabilities, the preliminary record is insufficient to support such a determination. "The basis for a successful disparate impact claim involves a comparison between two groups -- those affected and those unaffected by the facially neutral policy." See Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 575 (2d Cir. 2003). While the record certainly indicates that some EA participants with disabilities have experienced hardship, the record does not contain information regarding the EA participants who have not been affected by DHCD's motel policy, or the effect of the policy on EA participants without disabilities. Whether "a quantitative or qualitative comparison," ids="9297340" index="112" url="https://cite.case.law/f3d/352/565/#p575">id. at 578, "there must be some analytical mechanism to determine disproportionate impact," ids="9297340" index="113" url="https://cite.case.law/f3d/352/565/#p575">id. at 576. To prevail on a claim of a failure to provide a reasonable accommodation, however, a plaintiff need not show that the challenged policy has a disproportionate impact on people with disabilities. See Henrietta D., 331 F.3d at 273.

The plaintiffs also argue that DHCD violated the requirement that "[ninety] days before promulgating or amending any regulations, administrative practice or policy that would alter eligibility for or the level of benefits [of the EA] program, other than that which would benefit the clients," DHCD must notify the Legislature. See St. 2017, c. 47, § 2, line item 7004-0101. The judge initially concluded that the plaintiffs were likely to prevail on this claim, but on reconsideration observed that "[i]t may be debatable whether DHCD's decision to stop new hotel placements was a new policy that triggered the requirement to notify the Legislature under the Line Item, unless the change benefits recipients." Insofar as it appears that the judge ultimately did not rely on this claim as a basis for entering preliminary relief, we do not address the matter further.

I also do not believe that the judge concluded, as the court contends, that once DHCD approves a requested transfer as an ADA accommodation, the family's current shelter "immediately becomes 'ADA noncompliant' ". Ante at note 12. See ante at ----, 108 N.E.3d at ----. I do not see where in his decision he makes such a claim. The judge stated that "the plaintiffs are likely to prove that an ADA-noncompliant shelter is not 'available' " within the meaning of the motel proviso, but did not state that a shelter becomes ADA-noncompliant as soon as a request for transfer is approved. Indeed, the judge did not fault DHCD for failing to make "immediate" transfers. What he focused on was that DHCD had failed to implement approved transfers for a substantial period of time, in some cases for "more than six months."

It is possible that the Superior Court judge believed that, because the order requires a hotel or motel placement only where the Department of Housing and Community Development (DHCD) has already determined that a transfer is a reasonable accommodation required under the ADA -- and because an accommodation is "reasonable" under the ADA where it is provided within a reasonable time -- the order already makes clear that such transfers need not be immediate. In denying DHCD's emergency motion for reconsideration of the order, the judge stated that "the concept of reasonableness is already incorporated into the Order's description of circumstances calling for relief," which are based on "DHCD's own determination of the accommodation needed for each family -- a determination that itself is a finding of reasonableness." At the same time, DHCD stated in its emergency motion that it understood the order to require immediate transfers, and the judge did not refute this interpretation. If the judge indeed intended the order to require immediate transfers, I agree with the court that this was error.

In denying DHCD's emergency motion for reconsideration, the judge again clarified: "If DHCD can provide accommodation without using hotels ..., the Order fully allows it to do so. The Court, in fact, encourages DHCD to do so."

The court warns that a preliminary injunction would "run[ ] afoul of the principle that a preliminary injunction 'ordinarily is issued to preserve the status quo pending the outcome of litigation.' " Ante at note 16. But this principle does not require us to preserve the status quo where it violates the law. As I have explained, the preliminary injunction here would preserve much of the status quo -- respecting DHCD's preference for family shelters over hotels and motels -- and alters DHCD's policies and practices only to the extent that they conflict with its obligations under the ADA. Indeed, the only "affirmative action" that DHCD would be required to take is that which is already required under Federal law. Id.

To avoid undue or burdensome litigation relating to the preliminary injunction, the Superior Court judge may invite the parties to submit a joint protocol detailing the steps DHCD would take in order to provide the requested accommodations within a reasonable period of time. Such a protocol may include, among other things, guidelines for determining what constitutes "a reasonable period of time" in different kinds of cases.

The court takes the view that "[t]he paucity of the [factual] record" makes a modification of the preliminary injunction "unwise at present." Ante at note 16. But the record before us already establishes the grounds for the very narrow preliminary injunction that I propose today. This preliminary injunction would require only what the court has itself recognized is required under the ADA: that DHCD, in administering the EA program, provide reasonable accommodations to individuals with disabilities, and that such accommodations be provided, not necessarily immediately, but within a reasonable time. What else must the record show before we can ask that DHCD comply with Federal law?
The court warns of the possible "unintended adverse consequences" of a preliminary injunction, writing that compliance with a preliminary injunction may entail significant expense, and may even "force DHCD dramatically and decisively to scale back its family shelter capacity in favor of motels." Ante at note 16. But DHCD cannot be excused from its obligation to provide reasonable accommodations under the ADA simply because it might be expensive. As the court itself recognizes, this obligation is "nondiscretionary." Ante at note 13. Moreover, the preliminary injunction does not require DHCD to "scale back" family shelters in favor of hotels or motels. To the contrary, it gives DHCD a choice: DHCD can either provide the required accommodations through family shelters -- which may entail an expansion, rather than a reduction, of family shelter space -- or, if it is unable to do so, it can place families in hotels or motels until it is able to do so. The bottom line is that DHCD must provide reasonable accommodations under the ADA, and if placing families in hotels or motels is the only way to provide those accommodations -- and again, nothing in the preliminary injunction prevents DHCD from finding another way to do so -- then that is what DHCD must do.